### JOHN WHEELER v. DELCIA WHEELER.
#### No. 2899.

**District Courts—Statutes Construed.** — The Act of 1889 which divided Dallas County into two judicial districts and made the dividing line to pass through the centre of the court house, contemplated that the courts of said district should be holden in the one court house of Dallas County. After the destruction of the court house which existed when the law was enacted the County Commissioners Court rented for court house purposes a building which was located entirely within the territorial limits of one of the districts. *Held,* that sessions of the District Courts of both districts could be legally held in such rented building.

APPEAL from Dallas. Tried below before Hon. R. E. Burke. The opinion states the case.

*Bassett & Muse* and *John Bookhart,* for appellant.

*J. D. Thomas* and *M. L. Crawford,* for appellee.—The court erred in hearing and determining said case under the circumstances stated in the agreed case, because said court was held without the territorial limits of said Fourteenth Judicial District, and was consequently without power or authority to sit for the adjudication of causes and to render said judgment outside of said limits.

Territorial limits of the district established and court required to be held therein. Laws 1889, p. 152, secs. 1, 2; Const., art. 5, secs. 7, 14.

In construing the law the ordinary signification of the word "therein," meaning within the limits prescribed, must prevail in the absence of any evidence of a contrary intent on the part of the Legislature. Evans v. Jordan, 9 Cranch, 203; Gardner v. Collins, 2 Pet., 91, 93; Platt v. Railway, 9 Otto, 58.

The court has no power or authority to sit without the district. Foster v. McAdams, 9 Texas, 542; Clements v. San Antonio, 34 Texas, 25.

The legislative intent must be gathered from the language of the statute itself, and the language of the statute in question being clear and unambiguous there is no room for construction. Thompson v. Buckley, 1 Texas, 33, 35; Sutherland v. De Leon, 1 Texas, 303, 304; Pennock v. Dialogue, 2 Pet., 21; Cool. on Const. Limit., pp. 68, 70, 71, 83, 84; 9 Opinions Atty.-Gens., 438.

The language of the law being plain and clear, the courts can only declare what is its meaning. They can not sit in judgment upon the wisdom or policy of the law, nor reject its plain meaning because of the hardships and inconveniences which may result from such construction. Pool v. Wedemeyer, 56 Texas, 287, 296; Marsalis v. Pittman, 68 Texas, 625, 629; Gardner v. Collins, 2 Pet., 93; United States v. Railway, 1 Otto, 91; Jones v. Van Zandt, 5 How., 231.

The words of a statute will only be construed in a sense opposed to their plain literal meaning where such sense is the only one which is consistent with the manifest purpose of the Legislature in adopting it. Doe v. Considine, 6 Wall., 458; Burns v. Lawrence, 12 How., 17; Green v. Biddle, 8 Wheat., 1; Dean v. Reid, 10 Pet., 527; Heidlekoper v. Douglas, 3 Cranch, 70.

HENRY, ASSOCIATE JUSTICE.—At its last session the Legislature divided Dallas County into two judicial districts, making the Texas Pacific Railroad their dividing line, deviating from said line only in the city of Dallas, and there only to the extent necessary to pass through the centre of the county court house by passing along certain streets and the court house square.

The plaintiff brought this suit in the District Court of Dallas County to recover of the defendant, who is her lawful husband, a divorce from the bonds of matrimony.

The petition, which was filed December 3, 1888, was in due form and sufficient to authorize the judgment. By proper action of the clerk the cause was duly assigned and placed on the docket of the District Court of the Fourteenth Judicial District. The defendant answered by a general denial.

The case was properly pending for trial in said court on the 7th day of January, 1890, at which time the court house of Dallas County was destroyed by fire. Afterwards, on the 10th day of February, 1890, the

County Commissioners Court of Dallas County rented a building in the city of Dallas, known as the Farmers' Alliance Building, for the use of said county, and by proper proceedings declared the same to be the court house of said county, and assigned and set apart a suitable room therein in which to hold the sessions of said District Court of the Fourteenth Judicial District. Said building is wholly situated south of the dividing line between the Fourteenth and Forty-fourth judicial districts, as defined in the first section of the Act of February 27, 1889 (Laws 1889, p. 152), and no part of said building or of the room assigned and set apart for the holding of said court lies north of said line, and the same is not within the territorial limits of said Fourteenth Judicial District. It is conceded that no suitable building can be found in the city of Dallas within which to hold said two Districts Courts having suitable rooms for that purpose, one of which shall lie north and the other south of said dividing line, and none such can be procured or erected by the County Commissioners Court within a reasonable time, say within twelve months.

The judge of said court duly opened his court in the room so assigned and set apart for that purpose, and proceeded with the call of the docket thereof; and this cause being duly called, and the plaintiff by her counsel having announced herself ready for trial, the defendant by his counsel objected to the trial thereof, on the ground that the court had no power or authority to hold its sessions or to hear and determine said cause in said building and room, for the reason that the same were situated without the territorial limits of said Fourteenth Judicial District; but his said objection was overruled, and the court proceeded to hear and determine the cause, to all of which the defendant duly excepted.

No other cause had been previously heard by said court in said building or room.

Upon the trial the plaintiff introduced evidence sufficient to support the judgment.

The defendant offered no evidence. Judgment was thereupon rendered for the plaintiff, to which the defendant duly excepted and in open court gave notice of appeal.

No other question is involved in this appeal except that relating to the power and authority of the court to hold its sessions and to hear and determine causes over objection in said building and room.

It is insisted by the appellant that the law plainly directs that the court shall be held within the district by the use of the word "therein;" and that when the legislative intent can be arrived at from the words used in the statute, courts can not speculate beyond the reasonable import of the language used; that the spirit of the act must be gathered from the words employed, and not from conjecture *aliunde;* and that it is not to be assumed that the Legislature has used words without intending to convey an idea, or has misconceived the meaning of the words it has selected;

that when the language of a law is explicit and involved in no obscurity there is no room for construction, and hence no occasion to look beyond the letter of the law itself for its meaning and purpose.

We concur in the correctness of these propositions. The fact that the line dividing the two districts was made to deflect for a short distance from its general and well marked course for the purpose alone of passing through the centre of the court house adds force to the argument furnished by the language of the act, that it was its purpose to require each court to be holden within the territorial boundaries of its own district. It also furnishes the argument that it is the unmistakable purpose of the act that the courts of both districts shall be held in the same house.

But other things must be considered. The act in question fails to express, in a number of particulars, everything that is essential to be done and observed to make lawful the terms of the courts to be held in the two districts. It was enacted with reference to the provisions and regulations of the general law on the same subject, and in construing it it is important to keep these in view.

Some of these provisions are as follows: Article 705 of the Revised Statutes makes it "the duty of the County Commissioners Court of each county * * * to provide a court house for the county."

A number of important acts are commanded to be performed at the court house of the county and can not be lawfully transacted elsewhere. The whole body of the law contemplates that each county shall have one court house and not a number of them. It is not essential that the whole of it should be under the same roof.

For the purpose of making execution sales, article 2310 of the Revised Statutes defines the "court house door" to be the principal entrance "to the house provided by law for the holding of the District Court."

This provision shows, even if it did not otherwise sufficiently appear, that the District Court is one of the courts that the Commissioners Court is charged with the duty of providing a "court house" for.

The sessions of the Commissioners Courts are expressly directed to be held "at the court house of their respective counties." Rev. Stats., art. 1525.

The Commissioners Court is authorized "when necessary, to provide buildings, rooms, or apartments at the county seats, other than the court house, for holding the sessions of the County Courts." Rev. Stats., art. 1521.

The Commissioners Court being positively charged with the duty of providing "a court house for the county," and express authority being given empowering it to provide a place other than the court house for one of the courts to sit, without mentioning the others, it comes fairly within a well known rule of construction to hold that there exists no authority to authorize either of the others to be held anywhere except at

the court house provided for that purpose, when the one provided is suitable and sufficient.

The intention of the act in question, if the construction is limited to its own terms, to require the courts for each district to be held within its own boundaries, is not more evident than is the purpose that both courts shall be held in the same building—the county court house.

There are, to say the least, as many reasons, and they are quite as strong, for not disregarding the last mentioned purpose as there are for giving effect to the direction that the courts shall be held within the boundaries of their respective districts. Conceding that the act creating the district equally expresses the two purposes, the relative weight of the one relating to the house is greatly increased by the other laws relating to the subject. None of the other laws have any regard to boundaries except those of the county itself, but, on the other hand, they are all unambiguous and emphatic in the requirement that all District Courts for the county shall be held in the county court house, at one place established for that purpose by the Commissioners Court.

In the case of Russell v. Farquhar, 55 Texas, 359, this court said: "While it is for the Legislature to make the law, it is the duty of the courts to 'try out the right intendment' of statutes upon which they are called to pass, and by their proper construction to ascertain and enforce them according to their true intent. For it is this intent which constitutes and is in fact the law, and not the mere verbiage used by inadvertence or otherwise by the Legislature to express its intent, and to follow which would pervert that intent. If the mere perusal should not enable the court to satisfactorily interpret it, then it becomes the duty of the court to look diligently for the intention of the Legislature, keeping in view at all times the old law, the evil, and the remedy."

The final title of the Revised Statutes directs that the "provisions thereof shall be liberally construed, with a view to effect their objects and to promote justice."

In the case of Sevier v. Teal, 16 Texas, 372, the validity of a judgment rendered by a court held away from the county seat was in question. Chief Justice Hemphill said: "It will not admit of question that by law courts of probate were required to be holden at the court houses of the respective counties. * * * The injunction to hold the courts at the county seats has reference only to the ordinary circumstances in times of peace, and can not be construed to prohibit the holding of courts altogether in times of war, for the reason that under pressure of hostilities it has become impossible or unsafe to hold them at the county seats."

The requirement to hold the courts in the county court house and at the same time, each in its own district, was possible and convenient when the law was enacted. By a contingency then unexpected and unprovided for it has become impossible to do both at present.

In arriving at the intention of the Legislature the changed conditions ought to be kept in view, and the laws on the subject ought to be given such interpretation as will give effect to the intention of the Legislature as applied to the change.

There is no constitutional restriction upon the power of the Legislature to authorize both courts to be held in the same district. No jurisdictional question relating to the powers of the courts can arise, as they have concurrent jurisdiction in every respect throughout the county.

The convenience of the people, which is the great object in view in prescribing a place for holding the courts, will be promoted by holding both in the same place. By establishing both at the same place, laws on all other subjects dependent upon or having relation to the place of holding the courts can have their full and literal application without confusion or uncertainty, which would not be so certainly the case if two places for holding District Courts should be established in the same county.

The necessity is a temporary one, and to meet it we think the County Court had authority to provide the building in which the court was held from which this appeal was taken as the county court house, and that all District Courts for the county may be lawfully held in said building until another one shall be provided.

The judgment is affirmed.

*Affirmed.*

Delivered March 12, 1890.