**ISBILL, County Superintendent, et al. v. STOVALL.**

No. 1630.

Court of Civil Appeals of Texas. Eastland.

Feb. 21, 1936.

Rehearing Denied March 13, 1936.

Smith & Smith and Gilbert Smith, all of Anson, for appellants.

Coombes & Andrews, of Stamford, for appellee.

FUNDERBURK, Justice.

This is a suit for mandamus and injunction brought by Mrs. Lova Mac Stovall against Earl Isbill, county superintendent, and Mrs. Frank Heflin, joined by her husband, Frank Heflin. W. W. Matlock and

John W. Harber, "as rural trustees of Nugent Common School District No. 25 of Jones County and in such capacity as such trustees," intervened, and in addition to a general demurrer and general and special denials asserted a cross-action for injunction "restraining the plaintiff from further imposing herself upon the Nugent Common School District and from further attempting to teach in said school," etc. It was also prayed that Mrs. Heflin be declared and adjudged to be the duly elected teacher of the Nugent school. The case was tried without a jury and final judgment rendered in favor of the plaintiff and against the defendant and interveners. The defendant and interveners have appealed.

■ The case was advanced in this court upon the assumption that the judgment appealed from was interlocutory, including the award of a temporary injunction. A study of the record, however, assures us that the trial involved a determination of all issues in the case and that the judgment was final. A bill of exception showing that the trial of the case and the rendition of judgment took place in vacation, in chambers, in the city of Abilene, in Taylor county, was qualified by the trial judge to show that "defendants and interveners answered to the merits without reservation and asked for affirmative relief, and, upon the issues joined, evidence was introduced by both sides and final judgment was rendered in this cause." Also, in the judge's findings of fact upon request duly filed, it is recited that after granting the prayer for intervention of Matlock and Harber, trustees of the Nugent Common School District, "the interveners joined with the defendants Earl Isbill as County Superintendent and Mrs. Frank Heflin and her husband Frank Heflin in an answer and cross-action; and joined issue on the merits and presented their general demurrer, which was overruled by the *court* and they excepted and in said cross-action they asked for affirmative relief, injunction, etc., and invoked the jurisdiction of the *court* upon such cross-action and no reservations were made in the original answer and cross-action for trial on the merits. No objection was made by either plaintiff, defendants or interveners to a trial before me on the merits and a full hearing was had before *the court* and oral and documentary evidence introduced with all formalities of a regular trial and that as a consequence thereof the trial was by consent of the parties under Art.1915, of R.S.1925." (Italics ours.) The judge's conclusion of law applicable to the above was: "I conclude as a matter of law that *as judge* of the district court of Jones County, Texas, the parties to this suit having consented I have authority in vacation to exercise all the powers, make all orders and perform all acts as fully as in term time and by such consent could legally try any civil case, except divorce cases, without a jury, and enter final judgment; and in accordance with such conclusion, I did try this case and enter final judgment under Art.1915, of R.S.1925." (Italics ours). The judgment recites that upon the overruling of their general exception, said "defendants and interveners then and there in *open court* excepted." (Italics ours.) Also, to the judgment they "then and there in *open court* excepted and in *open court* gave notice of appeal," etc. (Italics ours.)

■ It is apparent from appellants' assignments of error Nos. 1 to 6, inclusive, that they have misconceived the nature of the proceedings culminating in the judgment from which they prosecute this appeal. The gist of the complaint they make is that the court did not limit the trial and judgment to mandamus and injunction. It seems clear to us that there was nothing else involved in the suit but mandamus and injunction. The judgment determining the issues of mandamus and injunction determined all issues joined by the pleadings, and left nothing to be thereafter litigated.

■ However, assignment of error No. 1 is that, "The trial court committed an error of law in rendering, in vacation, at Abilene, Texas, a judgment in this cause that was then pending in the District Court of Jones County, Texas," etc. Assignment of error No. 6 alleged, "The trial court was without jurisdiction to enter the judgment," the reason therein stated being that "the district court of Jones County, Texas, was in vacation and was only acting in chambers at Abilene, Texas, in Taylor County, and a different county from which the suit was pending and was not acting as the district court of Jones County, Texas to the extent that he had jurisdiction to try a cause of action upon its merits," etc. The reasons are not an essential part of an assignment of error. Panhandle & S. F. Ry. Co. v. Burt (Tex.Civ.App.) 71 S.W.(2d) 390, and authorities therein cited. Said assignments of error, therefore, raise a question of the jurisdiction of the court, or judge, to try a civil suit pending in the district court of Jones county and render a final

1070

judgment therein, while sitting in a place outside of Jones county.

█ An approved definition of a "court" includes as an element thereof the place or places of its functioning. "A court is an agency of the sovereign created by it directly or indirectly under its authority, consisting of one or more officers, established and maintained for the purpose of hearing and determining issues of law and fact regarding legal rights and alleged violations thereof, and of applying the sanctions of the law, authorized to exercise its powers in due course of law at times and *places* previously determined by lawful authority." (Italics ours.) Townes Texas Pleading, p. 7. "It is a fundamental principle," says the same authority, "that common law courts can exercise judicial functions only at such times and places as may be fixed by law, and that judges can enter no orders in vacation except such as are expressly authorized by law." Id., p. 11. "A judge of the district court in this state *has no power* to adjudicate the rights of litigants except at the *time and places* prescribed by law for holding courts, unless the authority is conferred by statute." (Italics ours.) Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co., 88 Tex. 468, 486, 27 S.W. 100, 109. Again, it has been said: " 'All courts shall be open.' * * * And hence it is that *time, and place,* and terms, are prescribed for its sessions by law. And a court cannot lawfully hold its sitting at any other time or place." (Italics ours.) Hunton v. Nichols, 55 Tex. 217.

█ The Constitution itself fixes the place of holding regular terms of the district court at the county seat of the county. Const. art. 5, § 7. By provision of the Legislature, "All terms of the district * * * court shall be held at the county seat." R.S.1925, art. 1602. Under express authority of the Constitution, art. 9, § 2, statutory provision has been made for the location and removal of county seats (R.S.1925, arts. 1593 to 1601, as amended (Vernon's Ann.Civ.St. arts. 1593 to 1601), thereby giving rise to rights in the public as to the place in which governmental agencies, including district courts, shall perform their functions. Turner v. Tucker, 113 Tex. 434, 258 S.W. 149, 150. After enumerating statutory provisions which by construction were held not to prohibit a district court in a county comprising two judicial districts from sitting over in the other district but at the county seat, the Supreme Court in Wheeler v. Wheeler,

76 Tex. 489, 13 S.W. 305, 307, said: "None of the other laws have any regard to boundaries *except those of the county itself*, but, on the other hand, they are all unambiguous and emphatic in the requirement that *all district courts for the county shall be held in the county court house*, at one place established for that purpose by the commissioners' court." (Italics ours.)

In Turner v. Tucker, supra, in condemning as unconstitutional a statute creating a court having district court jurisdiction to sit at Texarkana, not the county seat, upon the ground that said act was not only contrary to article 5, section 7, of the Constitution, but article 9, § 2, as well, declared that it was the purpose manifested by a change in said article 5, § 7, "to make entirely plain the intent that the business of the district court should not be disposed of elsewhere than at the county seat."

We next consider whether R.S.1925, art. 1915, is effective to empower the judge or court to try the case and render final judgment while sitting in Taylor county. That provision is: "Judges of the district courts may in vacation, by consent of the parties, exercise all powers, make all orders, and perform all acts, as fully as in term time, and may, by consent of the parties, *try any civil case*, except divorce cases, without a jury and *enter final judgment*. All such proceedings shall be conducted *under the same rules as if done in term time;* and the right of appeals and writ of error shall apply as if the acts had been done in term time." (Italics ours.) This is the authority, if any, by which jurisdiction to render the judgment in this case must be sustained. If its language alone be considered, the provision is susceptible to two different constructions. It will do no violence to the language to ascribe thereto the intention of empowering the district *court*, by consent of the parties, to try cases and render final judgments out of term time, or, in other words, in vacation. The language of the provision just as reasonably lends itself to the construction that it authorizes the district judge (not the district court) to so try civil suits and render final judgments. In parts of the record in this case the terms "court" and "judge" appear to be used interchangeably. In the judgment, however, there is reflected the purported action of the "court."

█ We have no hesitancy in saying, under the principles and authorities hereinbefore referred to, that the district court

of Jones county has no jurisdiction to try a civil suit and render final judgment therein while sitting in a county other than Jones county. The question involved is one of judicial power, and it is an elementary and axiomatic principle of law that consent or agreement cannot supply a lack of jurisdiction in the sense of an absence of judicial power to act. If, therefore, there existed the requisite jurisdiction to try the case and render final judgment, it is because said article 1915 not only empowers a district judge (not as a court) to try such cases and render such judgments in vacation, but that such authority extends to the exercise of such jurisdiction outside of Jones county. Two distinct questions are therefore involved.

■ That the Legislature has authority to provide that a district judge (not a district court) shall have jurisdiction to try and render final judgment in a civil suit otherwise exclusively cognizable by a district court we think is doubtful. The Constitution, art. 5, § 1, vests "the judicial power of this state" in certain named courts and "in such other courts as may be provided by law." It provides for at least two terms of district courts in a county and empowers the Legislature "by general or special laws to authorize the holding of special terms of the court, or the holding of more than two terms in any county." Article 5, § 7. While the Legislature is granted extensive authority in providing for the distribution of judicial power (jurisdiction) among the courts, the Constitution itself makes certain distributions which, of course, to the extent it does so, operates as a limitation or restriction on the power of the Legislature. For example, one such distribution is the provision that the district court shall have original jurisdiction "of all suits to recover damages for slander or defamation of character." Article 5, § 8. Another is that the district court shall have original jurisdiction "of all suits for trial of title to land," etc. Id. Can the Legislature confer jurisdiction on the district *judge* as distinguished from the district court to try slander suits and land suits? In our opinion it can no more do so than it can confer such jurisdiction upon a justice of the peace. The jurisdiction which said article 1915 purports to confer, whether it be upon the court or judge, includes all civil suits of district court jurisdiction, except divorce suits, and such as are tried with a jury. In other words, it purports to confer jurisdiction to try suits of various kinds, the exclusive jurisdiction of many of which is expressly vested in the district court by the Constitution itself. It is therefore clear that if article 1915 be construed as authorizing *district courts* by consent of parties to try cases in vacation, there would be no question of an attempt to make a distribution of judicial power different from that made by the Constitution; but, on the other hand, if it be construed as an attempt to vest such jurisdiction in the district *judge*, it would be unconstitutional. It is a familiar rule that if a statute be susceptible of two different constructions, one of which would render it valid and the other unconstitutional and therefore void, it should be given the construction making it valid. Glass v. Pool, 106 Tex. 266, 166 S.W. 375; Spears v. City of San Antonio, 110 Tex. 618, 223 S.W. 166; Missouri, K. & T. Ry. Co. v. Mahaffey, 105 Tex. 394, 150 S.W. 881; State v. Humble Pipe Line Co., 112 Tex. 375, 247 S.W. 1082; State v. Galveston, H. & S. A. Ry. Co., 100 Tex. 153, 97 S.W. 71.

■ The validity of the statute in question has been fully established by judicial decisions. Glenn v. Milam, 114 Tex. 160, 263 S.W. 900, 901; Doeppenschmidt v. New Braunfels (Tex.Civ.App.) 289 S.W. 425; Montague County v. White (Tex.Civ.App.) 250 S.W. 736. So far as our investigation has shown, however, the jurisdiction thus sustained is as reasonably referable to the district court as to the district judge. In Glenn v. Milam, supra, Judge Cureton commented on the fact that the relators "made no contest of the right of the *court* to hear the case in vacation." (Italics ours.) We, therefore, do not regard the question now under consideration as having been authoritatively determined by judicial decisions in this state. For one case not discussing the constitutional question, but implying a contrary view, see Trayhan v. State (Tex.Civ.App.) 180 S.W. 646. For the reasons above stated, we think the statute should be construed as providing that by consent of the parties the district court of a county and not merely the district judge should have jurisdiction to try and render final judgment in vacation in any suit except those excluded by special mention.

■ But, if we should be mistaken in this view and it should be conceded that said article 1915 vests such jurisdiction in district judges and that in so doing it contravenes no constitutional provision, yet nevertheless the statute itself does not au-

thorize the district judge to try a case in a different county from that in which the district court in which the suit is pending is authorized to sit. The district court of Jones county could not in term time have tried the case outside of Jones county. This proposition is incontrovertibly established by the decisions hereinbefore cited, to which may be added American Nat. Ins. Co. v. Valley Reservoir, etc., Co. (Tex.Civ.App.) 209 S.W. 438; Hodges v. Ward, 1 Tex. 244; International & G. N. Ry. Co. v. Smith, 62 Tex. 185; 15 C.J. 899, § 270.

The statute does not purport to authorize anything that the district court in term time could not do. In granting the power "to perform all acts as fully as in term time," it certainly cannot be held that any intention is expressed to authorize acts that could not be done in term time. Further, it is expressly provided that "all such proceedings shall be conducted under the same rules as if done in term time." No rule governing what the district court could do in term time is more mandatory than the constitutional requirement that the regular term of the district court must be held at the county seat, or the statutory requirement that all terms must be held there.

These conclusions determine the judgment in this case. The invalidity of the judgment, however, does not affect the pendency of the suit in the district court of Jones county. Its status is the same as if it had never been tried. In view of another trial, we think it not inappropriate to comment upon some other questions presented by the record. We think the plaintiff's petition was insufficient. This conclusion involves two independent propositions. R.S. 1925, art. 2693, provides that the county superintendent "shall examine all the contracts between the trustees and teachers of his county, and if, in his judgment, such contracts are proper, he shall approve the same." There are decisions directly holding, and others certainly implying, that this provision vests in the county superintendent a judicial discretion. Vanlandingham v. Hill (Tex.Civ.App.) 47 S.W.(2d) 641; Thomas v. Taylor (Tex.Civ.App.) 163 S.W. 129, 131; Duncan v. Bowman (Tex.Civ. App.) 22 S.W.(2d) 683; Hill v. Smithville Ind. School Dist. (Tex.Civ.App.) 239 S.W. 987; Boyles v. Potter County (Tex.Civ. App.) 177 S.W. 210; Ratcliff v. Buna Ind. School Dist. (Tex.Civ.App.) 46 S.W.(2d) 459; Caviel v. Coleman, 72 Tex. 550, 10 S. W. 679, 680. Contra Miller v. Smiley (Tex.

Civ.App.) 65 S.W.(2d) 417; White v. Porter (Tex.Civ.App.) 78 S.W.(2d) 287.

In Thomas v. Taylor, supra, it is said: "It is clear that the section in question enjoins upon the county superintendent the duty of examining all contracts between trustees and teachers, and invests him with the discretion of determining whether such contracts are proper and approving the same if he so finds. That power carries with it the authority to refuse to approve any contract not deemed proper by him. * * * The Legislature evidently intended to clothe the county superintendent with revisory power over the contracts between trustees and teachers. He was placed as a check upon the power of trustees to make contracts, and protect the people of his county from ill-advised contracts which might waste the public school funds, or impose upon a community a teacher totally unfit, from a moral standpoint, to have charge of the young, or incapacitated in any other way to teach. If his examination of such contracts would amount to nothing but a perfunctory duty, there would be no reason for the law, and, taking the section in question alone, there can be no hesitation in declaring that the superintendent of public instruction is clothed with full power and discretion to examine and decide as to the propriety of every contract between trustees and teachers, and to approve or reject them as his sound judgment may direct." In Caviel v. Coleman, supra, the Supreme Court in pointing out the difference in certain laws relating to schools under the community system and the district system, which laws, as to the district system, were substantially the same as now, said: "The omission in these sections of the clause with regard to his approval of the contracts, while that relating to the vouchers is retained, evidences, we think, that the legislature did not intend to confer the power on him of controlling the contract." This was a clear implication that the court then construed the power of the county judge substantially the same as that now given to the county superintendent, as empowering him to control the contracts. Some of the cases cited show that the contract creates no enforceable rights until approved by the county superintendent. That is wholly inconsistent with his approval involving no discretion. In support of this view it is to be observed that the record reflects that the contracts in question were written, an express provision of which was: "This contract is consummated only upon its approval by the

County Superintendent and it shall become operative from and after the date of its approval." The writing therefore did not evidence the existence of contractual relations, absent the approval of the county superintendent. Plaintiff's petition was wanting in the averment of facts to show that the refusal of the county superintendent to approve was arbitrary, capricious, or fraudulent.

■ Notwithstanding that the county superintendent exercises a discretion as to the approval of a teacher's contract, provision is made for an appeal from his refusal to approve such contract to the county school trustees. In case of the refusal of the county superintendent to approve a teacher's contract followed by an appeal from that decision to the county school trustees and an adverse decision by the latter permitted to become final, the county superintendent would then be under the ministerial duty of approving it. A cause of action for mandamus would then exist to compel an approval. The pleading in this case was wholly insufficient to supply that requisite, because instead of alleging an appeal by the plaintiff to the county school trustees, or an appeal from the decision of the county superintendent refusing to approve the contract, the petition alleged an appeal by the county superintendent from the decision of the school trustees of common school district No. 25 in favor of the plaintiff and the decision of that appeal against the superintendent. The law makes no provision for any appeal by the county superintendent from the action of the district trustees. Manifestly no purpose could be served by such procedure. The law vests the county superintendent in effect with a veto power, and when he exercises that power the right of appeal is from that action and is in the parties at interest, who in this case would be the plaintiff. Upon the trial of this case such an appeal was sought to be proved, but there was no basis for it in the pleadings.

■ Two of the district trustees intervened, apparently without reference to the fact that the trustees are a body corporate, under the name of "district trustees of district No. 25, and County of Jones, State of Texas." R.S.1925, art. 2748. R.R. Reynolds was a trustee. Upon another trial we suggest that the trustees make themselves a party in their corporate name. See Butman v. Jones (Tex.Civ.App.) 24 S.W. (2d) 796.

The majority are of the view that the district judge, under the circumstances of this case, could have granted a temporary injunction, and no doubt would have done so but for the action taken, and that to prevent injustice the judgment should be deemed effective as a temporary injunction and continued as such subject to the further orders of the court below, or the judge thereof, and it is accordingly so ordered.

Subject to the above, it is the opinion of this court that the judgment of the court below should be reversed and the cause remanded, which is so ordered.