Elodia CRUZ, Individually and as Next Friend of Dee D. Cruz, Appellant,

v.

Sergio HINOJOSA and Alicia Hinojosa, Individually and as Guardians of Alberto Hinojosa, E–Z–Go, a Division of Textron, Inc., and Textron, Inc., Appellees.

No. 04–97–00755–CV.

Court of Appeals of Texas, San Antonio.

Dec. 1, 1999.

Rehearing Overruled Dec. 27, 1999.

Virgil W. Yanta, Richard V. Secord, Jr., Yanta, Flores & Korth, L.L.P., San Antonio, for Appellant.

Leo C. Salzman, Roger W. Hughes, Juan A. Gonzalez, Adams & Graham, L.L.P., Harlingen, Jesus Maria Alvarez, Alvarez & Associates, P.C., Rio Grande City, for Appellees.

Sitting: CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by: KAREN ANGELINI, Justice.

### Nature of the case

Elodia Cruz, Individually and as Next Friend of Dee D. Cruz, A Minor Child (collectively referred to as "Cruz") appeals from a take-nothing judgment rendered in favor of Sergio Hinojosa and Alicia Hinojosa, Individually, and Guardians of Alberto Hinojosa, A Minor, (collectively referred to as "Hinojosa") and E–Z–Go, A Division of Textron, Inc.; and Textron, Inc., (collectively referred to as "E–Z–Go").[1] Cruz filed a personal injury suit against the Hinojosas and E–Z–Go as a result of a golf cart accident in which her daughter, Dee Cruz, was injured. The Hinojosa's six year old son, Alberto Hinojosa, was the driver of the golf cart at the time Dee was hit by the golf cart. Cruz alleged that the Hinojosas were negligent in allowing Alberto to drive the golf cart. Cruz also alleged that E–Z–Go, the manufacturer and marketer of the golf cart, was liable under strict product liability theories. After hearing the evidence, the jury found that the accident occurred as the result of Dee's negligence and that no marketing, design, or manufacturing defects proximately caused the accident. The trial court entered a take nothing judgment against Cruz.

In the first issue, Cruz contends that the trial and judgment are a nullity because the trial court lacked jurisdiction to conduct the proceedings in an unauthorized place. In the second and third issues, Cruz complains of the court's failure to allow rebuttal evidence and exhibits to be sent to the jury during deliberations. In the fourth and fifth issues, Cruz asserts that the court erred by refusing to disqualify defense counsel and in permitting EZ–Go to use undisclosed discovery. In the sixth and seventh issues, Cruz asserts that the evidence was legally and factually insufficient to support the jury's findings. We affirm the trial court's judgment.

### Factual Background

Elodia Cruz gave Dee Cruz permission to attend a barbecue at the Hinojosa ranch with her friend Denise and Denise's parents. According to witnesses, Alberto had been giving children rides on the golf cart.

---

1. Hinojosa has not filed an appellee's brief. At trial, Hinojosa and E–Z–Go were represented by separate counsel.

Although Alberto was only six, his father, Sergio Hinojosa, had taught him how to drive the golf cart. Alberto weighed approximately 95 pounds and was tall for his age. Sergio testified that Alberto had driven the golf cart many times. Alberto drove Dee and Denise in the golf cart down to the pond to tell Sergio that dinner was ready. After reaching the pond, Dee and Denise exited the golf cart and began running back towards the house. Alberto gave three other children a ride and began driving toward the house. According to witnesses, Dee and Denise were running along the left side of the dirt road, while Alberto drove the golf cart in the center of the road. Suddenly, Dee veered into the road in front of the golf cart. Alberto applied the brake but the golf cart ran over Dee. Although Dee testified that Alberto was swerving to hit her, the other children testified that Dee ran in front of the golf cart. No adults witnessed the accident. After the accident, Alberto ran to tell his father about the accident and Dee was transported to the hospital.

### Jurisdiction

■ In the first issue, Cruz asserts that the trial and judgment are void because the court lacked jurisdiction to hold the proceedings in a place not authorized by the county commissioners. At a pre-trial hearing on April 4, 1997, Judge Pope of the 381st District Court announced that no courtrooms would be available the week that the case was scheduled to begin. Judge Pope took judicial notice of the fact that the 381st courtroom was being constructed and that the other courtrooms were being used for other matters.[2] Cruz's attorney suggested that trial be held at the Knights of Columbus Hall ("KC Hall") which was across the street from the courthouse. During the hearing, one of Cruz's attorneys looked into renting the KC Hall. At the conclusion of the hearing, the judge decided to hold the trial

at the KC Hall but told the parties that the county would not pay for the rental. The judge told defense counsel to check with their clients about holding trial at the KC Hall.

Before trial, E–Z–Go filed a plea in abatement and objection to the forum or in the alternative a motion for continuance because of improper site to hold a judicial proceeding. The court expressed reservations about proceeding to trial at the KC Hall, but denied E–Z–Go's motion. After the court denied its motion, E–Z–Go filed a mandamus in this court in which we denied relief without an opinion. After this court denied relief, E–Z–Go filed a request for mandamus relief at the Supreme Court which was also denied without opinion. Thus, on April 14 the court conducted voir dire and began trial at the KC Hall. On April 18, the case resumed at the Starr County Courthouse and concluded on April 25. After the trial, Cruz filed a motion to dismiss for lack of jurisdiction and a motion for new trial on the basis that the court lacked jurisdiction. The court denied the motions. On appeal, Cruz contends that the court lacked jurisdiction and E–Z–Go asserts that the court had jurisdiction. In the reply brief, Cruz argues that E–Z–Go judicially admitted in its plea in abatement and in its mandamus petitions that the court lacked jurisdiction and, therefore, cannot adopt the opposite position on appeal.

Article five, section seven of the Texas Constitution provides for division of the State into judicial districts and sets forth that "the court shall conduct its proceedings at the county seat of the county in which the case is pending, except as otherwise provided by law." TEX. CONST. art. V, § 7. The term "county seat" has been defined as "that town or city where the seat of the county government is located, where the courthouse is, where the courts are held and the county officers perform their functions" or "the place where the

---

**2.** E–Z–Go states in its brief that, although the 381st District Court was created on September 1, 1995, Judge Pope did not yet have a courtroom at the time of this trial.

courthouse is situated." *See Knowles v. Scofield,* 598 S.W.2d 854, 862 (Tex.Crim. App.1980); *Bridgman v. Moore,* 143 Tex. 250, 183 S.W.2d 705, 708 (1944). Cruz's lawsuit was filed in the 381st District Court of Starr County. The county seat of Starr County is Rio Grande City. The Starr County Courthouse and the KC Hall are located in Rio Grande City. Cruz contends that "county seat" only encompasses the location of the county and district courts and the county offices, normally the county courthouse. Thus, Cruz urges, any proceedings held outside the county courthouse are void unless the county commissioners provide for an alternate location. *See, e.g., Wheeler v. Wheeler,* 76 Tex. 489, 13 S.W. 305, 306 (Tex.1890) (finding that commissioners court authorized to use a private facility for a courtroom when courthouse burned down). Article 292.001 of the Local Government Code authorizes the commissioners court of a county to provide a building or rooms, other than the courthouse, for the housing of district courts, if the commissioners determine that the additional building or rooms are necessary. Tex. Loc. Gov't Code Ann. § 292.001(a) (Vernon 1999). The buildings or rooms must be located in the county seat. *Id.* § 292.001(b). It is undisputed that the county commissioners did not authorize the trial to be held at the KC Hall. E–Z–Go urges that the language, that the court shall conduct proceedings at the county seat, encompasses all locations in the county seat. According to E–Z–Go, because the KC Hall was within the county seat, the court had jurisdiction to hear the case. E–Z–Go acknowledges that section 292.001 allows the commissioners court to provide an alternative courtroom, but points out that the statute provides that the commissioners court *may* provide other facilities and, therefore, does not give the commissioners court exclusive power.

■ Numerous cases hold that a court lacks jurisdiction when proceedings are held in a different county from where the case is pending or outside the county seat. *See Stine v. State,* 908 S.W.2d 429, 431 (Tex.Crim.App.1995) (finding no jurisdiction where testimony occurred at hospital located in county of pending case, but not in county seat); *Howell v. Mauzy,* 899 S.W.2d 690, 699–700 (Tex.App.-Austin 1994, writ denied) (finding no jurisdiction to conduct proceedings in Dallas County case in Bowie County); *Isbill v. Stovall,* 92 S.W.2d 1067, 1070–71 (Tex.Civ.App.-Eastland 1936, no writ) (finding that court lacked jurisdiction to render judgment in Jones County case in Taylor County). Further, such a defect in jurisdiction cannot be remedied by consent or agreement of the parties. *See Stine,* 908 S.W.2d at 431; *Howell,* 899 S.W.2d at 699. These cases, however, are distinguishable because in this case the trial was held within the county seat. We do not read section 292.001 of the Texas Local Government Code to mean that judicial proceedings held outside the courthouse but within the county seat without commissioners court approval are void for lack of jurisdiction. Because the trial was held within the county seat, we find that the court had jurisdiction and the judgment is not void. We overrule the first issue.

### Rebuttal evidence

■ In the second issue, Cruz asserts that the court erred in refusing to allow rebuttal evidence. Specifically, Cruz complains of the exclusion of the videotape deposition of an expert witness, Dr. Jahan Eftekhar. The admission or exclusion of evidence is a matter within the trial court's discretion. *City of Brownsville v. Alvarado,* 897 S.W.2d 750, 753 (Tex.1995). A trial court abuses its discretion if its decision is "arbitrary, unreasonable, and without reference to guiding principles." *Goode v. Shoukfeh,* 943 S.W.2d 441, 446 (Tex.1997). In order to reverse a judgment due to an erroneous evidentiary ruling, the appellant must demonstrate that the erroneous ruling "probably caused the rendition of an improper judgment." Tex. R.App. P. 44.1(a)(1); *Alvarado,* 897 S.W.2d at 753. To determine whether the error

probably resulted in an improper judgment, we must review the entire record. *Alvarado,* 897 S.W.2d at 754. Further, an evidentiary ruling does not require reversal where the evidence in question is merely cumulative of other admitted evidence. *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989).

On direct examination, Cruz introduced Dr. Eftekhar's videotaped deposition. After the defense rested, Cruz wanted to re-offer portions of Dr. Eftekhar's deposition for rebuttal and provided a transcript of the anticipated rebuttal testimony. E–Z–Go objected on the basis that the testimony was repetitive and did not serve to rebut any testimony. After hearing arguments concerning the relevant portions of the deposition, the court sustained all but one of E–Z–Go's objections. Because the portions sought to be admitted had already come before the jury during the case-in-chief, the rebuttal testimony was cumulative and, therefore, did not cause the rendition of an improper judgment. We overrule the second issue.

## Jury Exhibits

In the third issue, Cruz complains that the court failed to send the admitted exhibits into the jury room during deliberations. Rule 281 provides: "The jury may, and on request shall, take with them in their retirement the charges and instructions, general or special, which were given and read to them, and any written evidence, except the depositions of witnesses, but shall not take with them any special charges which have been refused." Tex.R. Civ. P. 281. The Texas Supreme Court has held that Rule 281 is mandatory and that the trial court is required to send all exhibits to the jury room even in the absence of a request by jurors or counsel. *See First Employees Ins. Co. v. Skinner,* 646 S.W.2d 170, 172 (Tex.1983). At the motion for new trial hearing, Cruz's attorney testified that the jury reached a verdict before all of the exhibits could be located. Even if the court should have

made sure that the exhibits were sent to the jury room, any error shall not call for reversal unless the error probably caused the rendition of an improper judgment. Tex.R.App. P. 44.1(a)(1); *Id.* In *Skinner,* the court considered the entire record and whether the existence of the exhibits were disputed, and whether the jury examined the exhibits at the time they were admitted. *Skinner,* 646 S.W.2d at 173.

Although many exhibits were admitted during the trial, Cruz focuses on the exhibits containing technical drawings, photographs, and schematics of an alternative design for a golf cart. Dr. Eftekhar gave extensive testimony concerning the operation of a weight activated seat brake which had been used by Cushman Co., a former golf cart manufacturer. Dr. Eftekhar explained that the use of a seat brake would prevent the golf cart from being activated unless someone who weighed at least 110 pounds sat on the golf cart. Cruz urged that E–Z–Go should have installed the seat brake in its golf carts to prevent a child from being able to start the golf cart. Gerald Powell, E–Z–Go's reliability engineer, testified that the seat brake device had been tested in prototypes in the 1970's, but E–Z–Go did not believe that the seat brake worked very well. Thus, the existence of the seat brake device was not disputed but rather its reliability and effectiveness was contested. Because the jury heard extensive testimony concerning the seat brake device, we find that the failure to send the technical drawings and photographs to the jury room did not cause the rendition of an improper judgment. We overrule the third issue.

## Disqualification

In the fourth issue, Cruz asserts that the court erred by failing to disqualify the Hinojosa's attorney, Jesus Alvarez. Cruz filed a pre-trial motion to disqualify Alvarez because of a conflict of interest. At the hearing, Cruz testified that she hired Alvarez in February of 1997 to represent her in an eviction suit, but admitted

that they never discussed payment and that Alvarez never performed any services. At that time, the current lawsuit was pending and the Hinojosa's were represented by other counsel. Cruz testified that when she visited Alvarez the second time, he told her that Sergio Hinojosa had problems with his attorney and had come to him for representation. According to Cruz, Alvarez then asked her how Dee was doing and how much money she was asking for, but Cruz refused to answer the questions. Cruz admitted that she and Alvarez did not discuss any of the facts in this case.

 Disqualification is a severe remedy and a trial court will be reversed only if it abuses its discretion. *Spears v. Fourth Court of Appeals*, 797 S.W.2d 654, 656 (Tex.1990); *Ghidoni v. Stone Oak, Inc.,* 966 S.W.2d 573, 579 (Tex.App.-San Antonio 1998, pet. denied). In order to prove disqualification, the movant must show a substantial relationship between the subject matter of the prior representation and the pending litigation. *NCNB Texas Nat'l Bank v. Coker*, 765 S.W.2d 398, 399–400 (Tex.1989); *Ghidoni,* 966 S.W.2d at 578–79. Cruz admitted that the eviction matter and this personal injury suit had no legal or factual issues in common and she did not give Alvarez any information about the personal injury case. Thus, the court did not abuse its discretion in failing to disqualify Alvarez. We overrule the fourth issue.

### Discovery

 In the fifth issue, Cruz contends that the court erred in allowing E–Z–Go to introduce evidence of a brake mechanism schematic which had not been produced in response to discovery requests. Cruz objected on this basis but the court overruled the objection. Former Rule 215(5) of the Texas Rules of Civil Procedure provides that a trial court, in the absence of good cause, must exclude evidence offered by a party that has not been disclosed in discov-

ery. Cruz contends that the trial court failed to find any good cause.

Gerald Powell, E–Z–Go's expert, testified concerning a brake mechanism that E–Z–Go had tested in its own golf carts. After attempting to draw the mechanism, defense counsel offered a schematic of the brake mechanism into evidence. After Cruz's objection, the court held a hearing outside the presence of the jury. Evidently, the schematic had been produced the Friday before trial. E–Z–Go asserted that the requests for production did not encompass the schematic and that discovery concerning the seat brake only became relevant after Powell's deposition which was taken shortly before the trial began. According to E–Z–Go, Cruz amended the petition to include a brake defect after Powell's deposition. As a result of the hearing, the court apparently found no duty to produce the schematic or good cause which requires reversal only upon a finding of an abuse of discretion. *See Morrow v. H.E.B., Inc.,* 714 S.W.2d 297, 298 (Tex.1986). We find no abuse of discretion. Further, Cruz has failed to allege how the admission of the schematic probably caused the rendition of an improper judgment. *See* Tex.R.App. P. 44.1(a)(1). Powell had testified previously, without objection, concerning the brake mechanism and the schematic simply served to illustrate Powell's testimony. Thus, we overrule the fifth issue.

### Sufficiency of the evidence

 In the sixth and seventh issues, Cruz contends that the evidence was legally and factually insufficient to support the jury's verdict. If an appellant is attacking the legal sufficiency of an adverse finding to an issue on which he had the burden of proof, the appellant must demonstrate that the evidence establishes all vital facts as a matter of law. *Victoria Bank & Trust Co. v. Brady,* 811 S.W.2d 931, 940 (Tex.1991). First, we examine the record for evidence that supports the jury's finding, while ignoring all evidence

to the contrary. *Id.* Second, if no evidence exists to support the jury's finding, we examine the entire record to determine if the contrary proposition is established as a matter of law. *Id.*

Cruz complains about the jury's finding that Dee Cruz was negligent and that no marketing, design, or manufacturing defect existed which proximately caused the accident. With regard to the negligence finding, numerous witnesses testified that Dee Cruz ran in front of the golf cart. Only Dee Cruz testified that Alberto swerved to hit her. Having found evidence to support the jury's finding that Dee's negligence caused the occurrence, we find legally sufficient evidence to support the verdict.

As to the defects, Cruz merely asserts that the evidence at trial overwhelmingly established that the golf cart was defectively designed, manufactured, and marketed. Cruz, however, points to no record evidence to support this assertion. Having reviewed the evidence supporting the jury's finding, we find evidence that the accident was proximately caused by Dee's negligence and not as a result of any defect. E–Z–Go's expert, Powell, testified that only one other golf cart manufacturer had used a warning label about children driving the golf cart and no such warnings were required by industry standards. With regard to a design defect, Powell testified that the seat brake had been ineffective and would have permitted Alberto, who weighed 90 to 95 pounds, to operate the golf cart. Thus, legally sufficient evidence exists to support the verdict. We overrule the sixth issue.

 Under a factual sufficiency challenge, the party who had the burden of proof must demonstrate that the adverse finding is against the great weight and preponderance of the evidence. *See Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983). In reviewing factual sufficiency issues, the reviewing court considers all of the evidence to determine whether the findings are so against the great weight

and preponderance of the evidence as to be manifestly unjust. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986); *In re King's Estate,* 150 Tex. 662, 244 S.W.2d 660, 661 (1951).

Viewing all of the evidence, we find that witnesses to the accident testified that Dee ran in front of the golf cart. Although Dee testified that Alberto chased her and swerved to hit her, the jury assesses the credibility of the witnesses and we do not substitute our judgment for that of the fact-finder. *See Pool v. Ford Motor Co.,* 715 S.W.2d 629, 634 (Tex.1986). With regard to the defects in the golf cart, each side presented expert testimony concerning the necessity of warning labels and a seat brake mechanism. The jury was entitled to believe the testimony of E–Z–Go's expert. Having reviewed all of the evidence, we find that the jury's findings are not so against the great weight and preponderance of the evidence as to be manifestly unjust. Thus, the evidence was factually sufficient to support the judgment. We overrule the seventh issue.

We affirm the judgment.

Concurring opinion by: CATHERINE STONE, Justice.

Concurring opinion by: CATHERINE STONE, Justice.

I concur with the result reached in the majority opinion. I write separately, however, to address an issue raised at oral argument.

During oral argument, counsel for Cruz contended that allowing trials to be conducted at locations other than the county courthouse when not specifically authorized by Commissioner's Court would result in the possibility that a trial court could hold trials at any location it desired, even secret locations. The specter of "star chamber" proceedings was raised.

The threat of secret proceedings should not be taken lightly. As noted by the court of criminal appeals:

Defendants have the right to a speedy and public trial, and the constitutional requirement that court proceedings occur in the county seat is a fundamental way to keep our ... process open and public ...

*Stine v. State*, 908 S.W.2d 429, 431 (Tex.Crim.App.1995)(plurality op.). The traditional requirement that court be held at a fixed location can be traced to the Magna Carta. *See* Tex. Const. art. V, § 7, interp. commentary (Vernon 1993). The "county seat" requirement thus should be viewed as a procedural safeguard ensuring a defendant's basic right to a public trial. *Fain v. State*, 986 S.W.2d 666, 672 n. 8 (Tex.App.-Austin 1999, pet. ref'd). While we recognize the potential for secret proceedings, that is not what happened in this case; nor did commencement of trial in a location other than the county courthouse deprive the trial court of jurisdiction to proceed.