**Roger Eugene FAIN, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 03–95–00427–CR.

Court of Appeals of Texas, Austin.

Dec. 17, 1998.

Rehearing Overruled March 4, 1999.

Before Chief Justice ABOUSSIE, Justices POWERS, JONES, KIDD, B.A. SMITH, YEAKEL and ONION.[*]

BEA ANN SMITH, Justice.

After granting the State's motion for rehearing *en banc*, we withdraw the panel opinion and judgment issued March 12, 1998 and substitute this one in its place. This is an appeal from a conviction of murder. *See* Tex. Penal Code Ann. § 19.02(b)(1), (2) (West 1994).[1] After the jury returned a verdict of guilty, appellant Roger Eugene Fain pleaded true to the enhancement of punishment allegations as to prior convictions, and the trial judge assessed punishment at life imprisonment. On original submission, the panel voted to reverse appellant's conviction on an unassigned point of error, holding that the district court had no authority to act and therefore lacked jurisdiction over the case. The panel found that there had been no change of venue and concluded that the Williamson County district court erred by conducting this trial in the county seat of Smith County without a change of venue. The panel held that this procedure violated article V, section 7 of the Texas Constitution, and declared the district court's judgment void. We granted the State's motion for rehearing *en banc*.

Today, the Court *en banc* holds that the trial court's error was procedural, not jurisdictional, and that appellant waived any error relating to venue by failing to object at trial. We will therefore address the six points of assigned error that the panel did not reach. Appellant raises six points of error claiming that he was denied due process of law, that

he did not receive effective assistance of counsel, and that the trial judge made erroneous evidentiary rulings. Because we find appellant's assigned points of error to be without merit, we will affirm the judgment of conviction.

**Unassigned Error**

We will first address the unassigned point of error on which the panel voted to reverse. The indictment upon which this conviction was obtained charged Roger Eugene Fain with the murder of Sandra Dumont in Williamson County, and was returned to the 277th District Court of Williamson County. The case came before Judge John R. Carter of the 277th District Court. Fain's counsel moved for a change of venue, arguing that inflammatory media publicity in Williamson County had created public hostility toward Fain and made the selection of an impartial jury in that county unlikely. Judge Carter announced in December 1994 that he intended to grant Fain's motion.

However, in January 1995, Judge Carter approved an agreement signed by the prosecutor, defense counsel, and Fain consenting to try the case in Smith County without a formal change of venue. The agreement specified that the case would be tried before a jury selected from a Smith County jury panel, but that the case would remain on the docket in Williamson County and all matters apart from the actual jury trial would be conducted in Williamson County. Furthermore, the defense and the prosecution both agreed to waive "any and all rights to a formal transfer of venue to Smith County" and "any and all rights to complain of the failure of the Court to formally transfer venue to Smith County." The case was tried by Judge Carter in Tyler, the county seat of Smith County. A Smith County jury convicted Fain of Dumont's murder, and Judge Carter sentenced Fain to life imprisonment.[2]

---

[*] Before John F. Onion, Jr., Presiding Judge (retired), Court of Criminal Appeals, sitting by assignment. *See* Tex. Gov't Code Ann. § 74.003(b) (West 1998).

1. The current code is cited for convenience. For the law applicable and in effect at the time of the offense, *see* Act of May 24, 1973, 63d Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 913 *as amended by* Act of May 28, 1973, 63d Leg., R.S.,

ch. 426, art. 2, § 1, 1973 Tex. Gen. Laws 1123 (Tex. Penal Code § 19.02(a)(1), (2), since amended).

2. Because venue was never formally transferred to Smith County, there is also no formal order transferring the case back to Williamson County. As a consequence, the present appeal was brought to this Court from Williamson County.

### Jurisdiction Versus Authority

In our prior opinion, this Court held that the act of trying Fain in Smith County while the case remained on the docket in Williamson County violated article V, section 7 of the Texas Constitution. Tex. Const. art. V, § 7.[3] The panel construed this circumstance as a jurisdictional error, which is a type of fundamental error that can be raised on appeal even if no objection was made at trial. *See Methodist Hosps. of Dallas v. Texas Workers' Compensation Comm'n*, 874 S.W.2d 144, 149 (Tex.App.—Austin 1994, no writ). However, in *Davis v. State*, 956 S.W.2d 555 (Tex. Crim.App.1997), the Court of Criminal Appeals carefully explained the difference between a court's *jurisdiction* and its *authority* or *power to act*. In that case, Davis challenged the revocation of his probation for possession of a controlled substance by arguing that the magistrate's order placing him on probation was void because the district judge's order of referral was signed two days after Davis's plea was taken. The court of appeals held that the late referral was untimely and ineffectual; therefore, jurisdiction was never conferred upon the magistrate, and the magistrate's order imposing probation was void. *See Davis v. State*, 928 S.W.2d 289, 291 (Tex.App.—Fort Worth 1996), *rev'd*, 956 S.W.2d 555 (Tex.Crim.App. 1997). Believing the error to be jurisdictional, the court of appeals held that it could be raised for the first time on appeal and reversed Davis's conviction. *See* 928 S.W.2d at 291.

The Court of Criminal Appeals unanimously voted to reverse. In an opinion joined by seven members of the court,[4] Presiding Judge McCormick stated: "Jurisdiction is generally understood to denote judicial power or authority. However, ... this term is often misapplied." *Davis*, 956 S.W.2d at 557. The court explained that the Texas Constitution vests jurisdiction in the district courts, not in judges, for whom the constitution lists qualifications and provides certain circumstances in which judges may be disqualified

from acting. *See id.; see also* Tex. Const. art. V, §§ 7, 11. Jurisdiction, the court noted, is something possessed by courts, not by judges: "It is a misnomer to speak of the jurisdiction of a judge outside the realm of the jurisdiction of the court in which he sits." 956 S.W.2d at 558. "The judge is merely an officer of the court ... [h]e is not the court itself." *Id.* at 557–58 (quoting *Ex parte George*, 913 S.W.2d 523, 526 (Tex.Crim.App. 1995)).

The *Davis* court quoted at length from Judge Meyers's concurring opinion in *Stine v. State*, 908 S.W.2d 429 (Tex.Crim.App. 1995), which explained:

> Although the word "jurisdiction" has a broad meaning in common parlance, and is often used as a synonym for "authority" even in legal writing, it is traditionally considered in the law to identify a much more specific kind of power. A court's jurisdiction is comprised generally of its authority to render a particular kind of judgment (such as an order of commitment or a judgment for money damages) in some kinds of disputes (such as felony criminal prosecutions or personal injury lawsuits) between certain classes of persons (such as everyone present within the state or within a subdivision of the state). There are of course, many other nonjurisdictional aspects of litigation in which the conduct of a court is controlled by law. Sometimes, when the court's conduct violates one of these laws, especially a law which seems "mandatory" on its face, it is common to say that the court did not have authority to act as it did. But it is a mistake to say that the court was without jurisdiction in the matter.

*Stine*, 908 S.W.2d at 434 (Meyers, J., concurring) (citations omitted).

*Davis* then addressed the difference between a trial judge's acts that are *void* and those that are merely *voidable*. The court observed that when a judge is disqualified under the constitution or by statute, she

---

3. That provision states, in pertinent part: "The Court shall conduct its proceedings at the county seat of the county in which the case is pending, except as otherwise provided by law." Tex. Const. art. V, § 7.

4. Including Presiding Judge McCormick, eight judges signed the majority opinion; Judge Overstreet concurred only in the result.

lacks authority over the proceedings and her actions are a nullity, *i.e.*, void. *See Davis*, 956 S.W.2d at 559. As examples, the court listed circumstances such as when a judge presides over the same case she originally prosecuted, or is related to one of the parties by affinity or consanguity. *See id.; see also* Tex. Const. art. V, § 11. Similarly, *Davis* noted that a temporarily appointed municipal judge's actions have been held void because he had not taken the oath of office as required for elected judges and appointed officers by article XVI, section 1. *See Davis*, 956 S.W.2d at 559 (citing *French v. State*, 572 S.W.2d 934 (Tex.Crim.App.1978) (on second motion for reh'g)).

In contrast, the *Davis* court observed, "errors involving the violation of a statutory *procedure* have not been deemed to be *void*, but *voidable.*" *See Davis*, 956 S.W.2d at 559 (emphasis added). The court cited *Miller v. State*, 866 S.W.2d 243 (Tex.Crim.App.1993), a case in which the defendant argued that because the procedures for appointing a special judge[5] were not followed, the special judge lacked jurisdiction to hear the case. While the docket sheet noted that the special judge had been appointed on motion of the court, Miller had not received the statutorily required notice and hearing on the issue, and he had not agreed to the appointment. *See Miller*, 866 S.W.2d at 246. The court observed that Miller's attack was directed at the procedure by which the special judge was appointed, but did not challenge the court's jurisdiction in the proceeding below. *See id.* at 246 n. 6. Nor did Miller claim that the special judge was disqualified as a matter of law. *See id.* Miller's conviction was thus "voidable" but not "void." *See Davis*, 956 S.W.2d at 559.

The *Davis* court noted that the type of procedural error involved in *Miller* requires an objection to preserve it for appellate review: "Therefore, if a judge is qualified and not constitutionally or statutorily disqualified, his actions are not *void* due to procedural irregularities in the manner in which the case came before that individual, although it may be error rendering the conviction *voidable.*" *See Davis*, 956 S.W.2d at 559 (citing *Miller*, 866 S.W.2d at 245–46) (emphasis added). Applying the law to the facts of the case before it, the court in *Davis* found that the jurisdiction of the trial court, the authority of its judge, and the magistrate's authority to hold the position of magistrate were not in question. *See id.* at 560. Specifically, the court held that the trial court's *jurisdiction* was not affected by the procedural error, and the order placing Davis on probation was not void. *See id.* The court acknowledged that an error had been made by the trial judge, making the error "voidable" but not "void," a distinction carved out earlier in the opinion. *See id.* at 559. Because the error was not jurisdictional and the conviction was not void, the court held that the court of appeals had erred in allowing Davis to raise the error for the first time on appeal. *See Davis*, 956 S.W.2d at 560.

### The Purposes Behind the Change of Venue Provisions and the County Seat Requirement

Fain, his attorney, and the prosecutor in this case signed a written agreement allowing a change of venue to Smith County without the necessity of a formal transfer of venue, because all parties agreed that Fain's notoriety in Williamson County as a murder suspect would prevent a fair trial there. On the basis of this agreement, Judge Carter attempted to move the venue of the proceedings to Smith County. In so doing, he failed to follow the procedures for change of venue required by the Code of Criminal Procedure. *See* Tex.Code Crim. Proc. Ann. arts. 31.01–31.03 (West 1989). Fain did not object to this defect at trial—indeed, he twice requested it, and *affirmatively waived in writing his right to complain of the court's failure to formally transfer venue to Smith County.* Fain also did not assign this procedural irregularity as error on appeal. Clearly, neither Fain nor his counsel believed that Fain was harmed in any way when the change of venue he requested was accomplished in this manner.

---

**5.** A special judge is a person who serves as a judge in a particular case, but is not otherwise a judge. *See Miller*, 866 S.W.2d at 246.

Both the constitution[6] and the Code of Criminal Procedure[7] authorize a change of venue to protect a defendant from the dangers of unfair publicity. The section of the constitution requiring district court to be held in the county seat of the county where the case is pending, relied upon by the dissent, exists to protect a defendant from the opposite evil: the danger of a secret trial.[8] This danger is present when the public is prevented from learning where a defendant's trial will take place. However, it is clear that no such danger was present in this case, as the dissent concedes; Fain's trial, held in the county seat of Smith County, was still a highly publicized event. Nevertheless, the dissent reasons that Fain's highly public trial in the county seat of Smith County deprived the district court of jurisdiction. We disagree that this procedural irregularity in effecting the change of venue is a circumstance that undermines the validity of the trial-court proceeding.

***Procedural Mistake Versus Constitutional Error***

If the court has jurisdiction of the parties and subject matter, its actions are not void no matter how erroneous they may be. *See Fontenot v. State*, 932 S.W.2d 185, 190 (Tex.App.—Fort Worth 1996, no pet.). The district judge's failure to order a formal change of venue did not affect the court's jurisdiction over the case. Instead, Judge Carter's action failed to comply with the statutory change of venue provisions. *See* Tex.Code Crim. Proc. Ann. arts. 31.01–.03 (West 1989). This is a statutory violation, not a constitutional one.

When interpreting our state constitution, we rely heavily on its literal texts, and are to give effect to its plain language. *See*

*Republican Party of Tex. v. Dietz*, 940 S.W.2d 86, 89 (Tex.1997). Article V, section 7 states, in pertinent part: "The Court shall conduct its proceedings at the county seat of the county in which the case is pending, except as otherwise provided by law." The "plain meaning" rule requires us to give a straightforward reading to the words "except as otherwise provided by law" in the constitutional provision. *See Oakley v. State*, 830 S.W.2d 107, 109 (Tex.Crim.App.1992) ("those who are called on to construe the Constitution should not thwart the will of the people by construing it differently from its plain meaning"). The plain meaning of this phrase is that the legislature has the power to draft laws that create exceptions to the county seat requirement. One pertinent example is chapter 31 of the Code of Criminal Procedure, which contains the rules pertaining to change of venue. Tex.Code Crim. Proc. Ann. ch. 31 (West 1989 & Supp.1999). The power to draft such provisions is explicitly granted to the legislature elsewhere in the constitution: "The power to change the venue in civil and criminal cases shall be vested in the courts, to be exercised in such manner as provided by law; and the Legislature shall pass laws for that purpose." Tex. Const. art. III, § 45.

Both article V, section 7 and article III, section 45 are enabling clauses, explicitly granting to the legislature the power to pass laws relating to venue. However, when a statutory change of venue procedure is disobeyed, it does not automatically follow that a constitutional violation has occurred. *See Garza v. State*, 974 S.W.2d 251, 260–61 (Tex. App.—San Antonio 1998, pet. ref'd) (trial court's failure to hold a hearing before granting change of venue motion violated Code of Criminal Procedure article 31.02, but error

---

6. *See* Tex. Const. art. III, § 45.

7. *See* Tex.Code Crim. Proc. Ann. ch. 31 (West 1989 & Supp.1999).

8. *See Stine*, 908 S.W.2d at 431 ("Defendants have the right to a speedy and public trial, and the constitutional requirement that court proceedings occur in the county seat is a fundamental way to keep our ... process open and public.") (plurality op.). Before 1891, there was no "county seat" requirement; the constitution simply required district judges to hold court "at one

place in each County in the District." Tex. Const. art. IV, § 6 (1861); art. IV, § 5 (1866, amended 1869); art. V, § 7 (1876, amended 1891, 1949, 1985). As the dissent points out, the traditional requirement that court be held at a fixed location can be traced to the Magna Carta. *See* Tex. Const. art. V, § 7, Interpretive Commentary (West 1993). The "county seat" requirement thus should be viewed as a procedural safeguard ensuring a defendant's basic right to a public trial.

was not constitutional). Since the drafters of the constitution explicitly granted to the legislature the power to create both change of venue rules and exceptions to the county seat requirement, it follows that a failure to comply with the change of venue rules results only in a statutory violation. Otherwise, *every* violation of the venue provisions, no matter how technical, would become "constitutional" in nature.

Indeed, the legislature has amended the change of venue provisions to permit a court to change venue to another county while still maintaining the case on its own docket, as Judge Carter attempted to do in this case. *See* Tex.Code Crim. Proc. Ann. art. 31.09 (West Supp.1999). Article 31.09 provides, in pertinent part:

> (a) If a change in venue in a criminal case is ordered under this chapter, the judge ordering the change of venue may, with the written consent of the prosecuting attorney, the defense attorney, and the defendant, maintain the original case number on its own docket, preside over the case, and use the services of the court reporter, the court coordinator, and the clerk of the court of original venue. The court shall use the courtroom facilities and any other services or facilities of the district or county to which venue is changed. A jury, if required, must consist of residents of the district or county to which venue is changed.

Tex.Code Crim. Proc. Ann. art. 31.09(a) (West Supp.1999).[9] Article 31.09 prescribes a manner of changing venue that permits a district court, with the agreement of the prosecutor and the defendant, to accomplish a change of venue while maintaining the cause on its own docket, and preside over the

trial in the courthouse of the county to which venue has been changed. The only reason article 31.09 does not apply in this case is that it became effective September 1, 1995, nine months after the parties agreed to try the case in Smith County without a formal change of venue. By employing this procedure nine months before article 31.09's effective date, Judge Carter anticipated the new statute's method for changing venue to another county while maintaining the case on the docket of the original court.

Article V, section 7 requires a district court to conduct its proceedings in the county seat of the county in which the case is pending, *except as otherwise provided by law.* Tex. Const. art. V, § 7 (emphasis added). The dissent complains that the 277th District Court conducted this trial beyond its territorial limits, thereby making its judgment void. However, article 31.09 now authorizes a district court to effect a valid change of venue by sitting in the county seat of another county; more importantly, article V, section 7 and article III, section 45 gave the legislature the power, long before article 31.09's effective date, to pass laws exempting courts from the county seat requirement. It would make little sense to hold that the trial court's action violated article V, section 7 in January but not in September when that constitutional provision did not change in the intervening months. All that changed in the interim was that a *statutory procedure* for accomplishing such a change of venue came into effect. Judge Carter's premature use of this change of venue procedure should thus be viewed as a procedural error, not a constitutional error. However, even labeling the error "constitutional" does not automatically make it subject to review, since constitutional errors may be waived if not preserved.[10]

---

9. Although the language of this article is somewhat ambiguous, we do not believe that the statute requires a formal change of venue to docket the cause in the new court before the benefit of not forwarding the cause to the docket of the new court is available. Such a construction would render the new procedure meaningless.

10. *See Briggs v. State,* 789 S.W.2d 918, 924 (Tex. Crim.App.1990) (right to confront witnesses may be waived); *Little v. State,* 758 S.W.2d 551, 564 (Tex.Crim.App.1988) (objection to improperly ob-

tained confession held waived); *Ex parte Russell,* 738 S.W.2d 644, 647 (Tex.Crim.App.1986) (no objection to introduction of void burglary conviction results in waiver) (op. on reh'g); *Smith v. State,* 721 S.W.2d 844, 855 (Tex.Crim.App.1986) (impeachment of defendant through evidence of post-arrest silence not fundamental error); *Perry v. State,* 703 S.W.2d 668, 673 (Tex.Crim.App. 1986) (unconstitutionally suggestive identification procedure not fundamental error); *Skillern v. State,* 890 S.W.2d 849, 880 (Tex.App.—Austin

### Waiver and Fundamental Error

There are three types of rules in our legal system: absolute requirements and prohibitions that cannot be waived or forfeited; rights of litigants that must be implemented unless affirmatively waived; and rights of litigants that are implemented upon request and can be forfeited by a failure to invoke them. *See Marin v. State*, 851 S.W.2d 275, 279 (Tex.Crim.App.1993). The first category consists only of nonwaivable, nonforfeitable requirements, such as jurisdictional requirements. *See id.; see also Methodist Hosps. of Dallas v. Texas Workers' Compensation Comm'n*, 874 S.W.2d 144, 149 (Tex.App.— Austin 1994, no writ). Certain due process violations have been recognized as so fundamental as to require appellate review even if no objection is made at trial. *See Skelton v. State*, 655 S.W.2d 302, 304 (Tex.App.—Tyler 1983, pet. ref'd) (trial court's striking of three defense witnesses called to testify to defendant's character and reputation did not require objection); *see also Howeth v. State*, 645 S.W.2d 787, 788 (Tex.Crim.App.1983) (court found that fundamental error existed after reviewing sufficiency of the evidence *sua sponte* ). Also in this category is the admission of evidence that operates to render the defendant's trial fundamentally unfair. *See Briggs v. State*, 789 S.W.2d 918, 924 (Tex.Crim.App.1990).

Some rights are widely considered so fundamental to the proper functioning of our adjudicatory process that they cannot be forfeited by inaction alone; these rights, which include a defendant's rights to the assistance of counsel and to a jury trial, are within *Marin* 's second category. *See Marin*, 851 S.W.2d at 278–79; *see also* Tex.Code Crim. Proc. Ann. arts. 1.051(f), (g), (h), 1.13 (West Supp.1999). Thus, a felony defendant's right to a 12–member jury can be affirmatively waived. *See Hatch v. State*, 958 S.W.2d 813, 816 (Tex.Crim.App.1997). However, most rights—and all procedural benefits, such as the right to a jury shuffle or a peremptory challenge—fall into the third group of rights that are only implemented at the defendant's request. *See Marin*, 851 S.W.2d at 278. "It is well settled that almost every right, constitutional and statutory, may be waived by the failure to object." *Smith v. State*, 721 S.W.2d 844, 855 (Tex.Crim.App.1986).

■ A trial judge's failure to conform to the proper procedures for a change of venue is properly categorized as falling into either *Marin* 's second or third category, as an affirmatively waivable right or one that can be waived by inaction. Neither logic nor controlling case law authority provides a compelling reason to elevate this procedural defect into the first category of non-waivable systemic requirements.[11]

In *Jones v. State*, 728 S.W.2d 801 (Tex. Crim.App.1987), the Court of Criminal Appeals reversed the court of appeals' holding that a magistrate's act of presiding over a probation revocation hearing in violation of the "magistrate statute"[12] constituted fundamental error. The Court of Criminal Appeals observed that the magistrate did have

---

1994, pet. ref'd) (constitutional vagueness objection to statute held waived).

**11.** *But see Mellon Serv. Co. v. Touche Ross & Co.*, 946 S.W.2d 862, 870 (Tex.App.—Houston [14th Dist.] 1997, no writ) (ruling art. V, § 7's county seat requirement jurisdictional and non-waivable); *Isbill v. Stovall*, 92 S.W.2d 1067, 1070–71 (Tex.Civ.App.—Eastland 1936, no writ) (holding that consent of parties did not give judge jurisdiction to hear case while vacationing in another county). *Stine v. State*, 908 S.W.2d 429 (Tex. Crim.App.1995) is not binding authority for the proposition that article V, section 7's "county seat" requirement is either jurisdictional or non-waivable. Three judges in *Stine* thought that the district judge's act of having the parties convene for one day at a hospital to hear the testimony of a doctor and a severely injured witness violated

the "jurisdictional" requirement of article V, section 7. *See id.* at 431 (plurality op.). Judge Meyers agreed that the court's action violated the "county seat" requirement, but pointed out that the requirement is not jurisdictional in nature. *See id.* at 433–34 (Meyers, J., concurring). While we are persuaded by Judge Meyers's explanation that the "county seat" provision of article V, section 7 is not jurisdictional, we respectfully disagree with his conclusion that this is a non-waivable, systemic requirement under *Marin*. Because no other judges joined Judge Meyers's concurrence in *Stine*, his view that a defendant cannot affirmatively waive an article V, section 7 defect at trial is not binding on this Court.

**12.** *See* Tex.Rev.Civ. Stat. Ann. art.1918c (West 1981), since repealed and recodified at Tex. Gov't Code Ann. §§ 54.301–.313 (West 1998).

proper jurisdiction over the case, and that acting in a manner proscribed by the Government Code "would constitute merely an irregularity in the proceedings." *Id.* at 803–04. Since Jones made no objection and did not even raise the issue on appeal, the court concluded that the lower court had erred in holding that the magistrate's violation was fundamental error mandating reversal. *See id.* at 804.

Similarly, in *McKinney v. State,* 880 S.W.2d 868 (Tex.App.—Fort Worth 1994, pet. ref'd), McKinney's counsel did not object when the trial judge allowed a magistrate to conduct the voir dire in a felony case, a delegation of duties not permitted under the Government Code. *See id.* at 869; Tex. Gov't Code Ann. § 54.656 (West 1998). On appeal, the court noted that the trial court did not lack jurisdiction and described the improper delegation of duties as a procedural "irregularity." *McKinney,* 880 S.W.2d at 870. Following *Jones,* the court held that McKinney waived the error by failing to object at trial. *See id.* Thus, under *McKinney,* even an improper delegation of the trial judge's duty to conduct voir dire proceedings in a felony case does not constitute fundamental error.

■ *Jones* and *McKinney* support the conclusion that a district judge's failure to order a formal change of venue belongs in *Marin*'s third category: the defendant must object to this defect at trial to preserve error on appeal. However, Fain's informed, written waiver of his right to object to the defective change of venue in this case would prevent this Court from considering the error even if it belongs in *Marin*'s second category of rights that can only be affirmatively waived. The trial judge's mistake did not deprive Fain of any of his basic constitutional rights, and therefore any error was not fundamental.

The factual circumstances of this case distinguish it from other cases that have labeled similar procedural defects violations of article V, section 7. In *Stine,* for instance, the complaint was that the proceedings had taken place at a hospital and away from the county seat. *See Stine,* 908 S.W.2d at 430–31 (plurality op.). That case did not involve a change of venue at all; instead, the violation is of a more constitutional dimension because it evokes concerns about secret proceedings and the defendant's right to a public trial. A defendant may request a change of venue if he believes that there is either "so great a prejudice against him that he cannot obtain a fair and impartial trial," or a "dangerous combination against him instigated by influential persons" in the county of original venue. Tex.Code Crim. Proc. Ann. art. 31.03(a) (West 1989). Thus, a transfer of venue defectively accomplished does not raise the constitutional concerns in *Stine* of secret proceedings or a closed trial when a public trial is held in the county seat of the new venue.

Similarly, the facts of the present case distinguish it from *Howell v. Mauzy,* 899 S.W.2d 690 (Tex.App.—Austin 1994, writ denied). In that case, the trial judge conducted the hearing on a motion to transfer venue and plea in abatement outside the county in which suit was pending. *See id.* at 698–99. This Court described the judge's action as a violation of article V, section 7. *See id.* at 700. However, in that case, the same suit was already pending in two different counties when the venue hearing was held, a situation that constitutes a jurisdictional defect because it was uncertain which of two courts had jurisdiction over the case. That concern is not raised when the same judge with jurisdiction over the case merely transfers the locus of the proceedings to another county and presides over the trial, as in the present case.[13]

13. The legislature recognized this difference when it amended the change of venue rules to allow a judge to "borrow" the courtroom and jury pool from another county when the prosecutor, defense attorney, and defendant all consent. *See* Tex Code Crim. Proc. art 31.09 (West Supp.1999). As the legislative history shows, the purpose of article 31.09 was to facilitate transfers of venue by allowing judges to retain jurisdiction over cases and use their own court's services when ordering a change of venue, so as to avoid overtaxing the resources of the transferee court. *See* House Comm. on Criminal Justice, Bill Analysis, Tex. H.B. 2949, 74th Leg., R.S. (1995). Unlike the situation in *Howell,* there is no dispute about which court has jurisdiction, since the original court retains jurisdiction at all times.

Two dated supreme court cases involving article V, section 7 are also distinguishable. In *Whitner v. Belknap*, 89 Tex. 273, 34 S.W. 594 (1896), the supreme court held unconstitutional a statute establishing a district court in Texarkana. *See id.* at 596. Although Texarkana was the largest city in Bowie County, it was not the county seat; therefore the court held that the statute violated article V, section 7 of the constitution. *See id.* In *Turner v. Tucker*, 113 Tex. 434, 258 S.W. 149 (1924), the supreme court likewise struck down legislation attempting to create a "Texarkana Court at Law" outside of the county seat. *See id.* at 150–51. However, both *Whitner* and *Turner* were decided prior to the 1949 amendment enabling the legislature to create exceptions to the "county seat" requirement. *See* Tex. Const. Art. V, § 7. Furthermore, the legislation at issue in those cases purported to permit trials in a place not the county seat of any county; in this case, Fain's trial was held in the county seat of Smith County. Finally, *Whitner* and *Turner* were cases deciding the constitutionality of statutes, and did not involve or address the issue of waiver. Those opinions are therefore not instructive under the circumstances of the present case.

Fain agreed to an informal transfer of venue to ensure that local publicity about the case would not result in prejudice in his trial. Fain's constitutional right to a public trial was not violated, nor was he denied due process. Although the trial judge made a procedural error in his attempt to change venue while maintaining the case on his court's docket, Fain did not object to this defect at trial or even raise it as error on appeal. There was no fundamental error committed in this case; as established above, the error was not jurisdictional. Therefore, we should not address it on appeal, whether as assigned or unassigned error. *See Davis v. State*, 956 S.W.2d 555, 560 (Tex.Crim.App.

1997) (reversing court of appeals for considering unpreserved error on appeal when trial court did not lack jurisdiction and conviction was not void).

Having disposed of the unassigned point of error on which the panel voted to reverse Fain's conviction, we will now address the six points of error assigned by appellant.

**Assigned Error**

■ Appellant has assigned six points of error.[14] First, appellant contends that he was denied due course of law when the trial court failed to conduct a hearing on the motion for new trial until the motion had been overruled by operation of law. Second, Fain claims that he was denied effective assistance of counsel when his appointed counsel miscalculated the date the motion for new trial would be overruled by operation of law, depriving Fain of a hearing on his motion for new trial. In his final four points of error, appellant · complains of evidentiary rulings. Fain contends that the trial court erred in admitting hearsay, permitting a witness to reveal his occupation, overruling an objection to evidence illegally seized, and allowing evidence of an extraneous act without the notice required by Rule 404(b) of the Texas Rules of Criminal Evidence.[15]

Appellant does not challenge either the legal or factual sufficiency of the evidence to sustain the conviction. However, a brief recitation of the facts will place the points of error in perspective.

## FACTUAL BACKGROUND

Sandra Dumont worked as a blackjack dealer. On July 24, 1994, she was dealing at Fat Tuesday's, a club on Sixth Street in Austin. It was a slow Sunday night and the manager told Dumont she could leave early. She gathered up her things and made a

---

**14.** Appellant has filed a *pro se* supplemental brief, but he has no right to hybrid representation. *See Allridge v. State*, 850 S.W.2d 471, 476 (Tex.Crim.App.1991), *cert. denied*, 510 U.S. 831, 114 S.Ct. 101, 126 L.Ed.2d 68 (1993). Therefore, we will not address the points appellant attempts to raise *pro se*. *See id.; see also Scarbrough v. State*, 777 S.W.2d 83, 92 (Tex.Crim.App. 1989).

**15.** The Texas Rules of Criminal Evidence, which were in effect at the time of appellant's trial, have subsequently been combined with the old Rules of Civil Evidence in the new Texas Rules of Evidence, effective March 8, 1998. The Rules of Evidence are cited throughout this opinion; any substantive differences between the current and former rules are noted.

phone call, dialing a call-back pager number. Almost immediately a male caller returned her page; the manager handed the phone to Dumont and when she concluded the call, he escorted Dumont to her car and watched her drive away safely. It was 11:30 p.m. He never saw Sandra Dumont again.

The next morning an Austin police officer observed a car with a flat tire stalled near a large open field in Round Rock. Sergeant Michael Phillips passed by the car on his way to and from work; after two days he stopped to investigate. From the license plate and VIN number he discovered that the vehicle belonged to Sandra Dumont, but it had not been reported as stolen. The car remained near the field for two more weeks. On August 12, 1994, Phillips read in the newspaper that Dumont and her car were missing. By then, the Williamson County Sheriff's office had towed away the abandoned car. Phillips recalled that he had smelled a foul odor coming from the field, and he returned to investigate. His findings led him to summon the Round Rock Police.

Dwayne Tucker operates blackjack games at several clubs; Dumont was his employee. Tucker became concerned when Dumont did not appear at his dealers' meetings on July 26 and August 2, 1994. On August 9, Tucker asked Laura Patterson, a friend of Dumont's, to accompany him to Dumont home's. There they discovered that the mail and newspapers had been accumulating since July 25. They notified the police. Dumont's address book, found in the house, contained the entry "Roger Fain 218–4655." Patterson testified that on five or six occasions, Dumont had sought her counsel regarding Dumont's relationship with Fain. Despite some frustrations, Dumont told her friend on July 10 that she intended to continue the relationship.

Dumont's skeletal remains were found in the field adjacent to the location of her abandoned car. Dr. James Reynolds, Dumont's dentist, was able to identify Dumont's skull and broken jawbone. According to the medical examiner and a forensic anthropologist, the fracture to Dumont's jaw occurred at or just before her death. The cause of death was a bullet wound to the head; the size of the holes in the skull indicated that a .22 caliber weapon was used.

When the police interviewed Fain, they observed an injury to his right hand. The record shows that his hand was not injured on July 24, but was injured on July 25. Fain told the police that the lid of his truck's tool box fell on his hand; he told someone else that he fell on his hand when his horse was spooked. To another individual Fain claimed that the hood of a truck fell on his hand, and to yet another he explained that he hurt his hand with a hammer.

Fain sought treatment for a broken hand at the emergency room of Seton Hospital Northwest on July 26. He told his nurse that the injury was caused by the falling lid of his tool box. Later Fain told the x-ray technician that he injured his hand "fighting"; the technician examined the x-ray and was not surprised by this explanation. Dr. David Mosier performed the surgery on appellant's hand. He likened the injury to the fracture of a boxer's hand following a blow sufficiently strong to break a jaw. Such a break is usually not accompanied by bruising, and there was no bruising on appellant's broken hand.

Fain first denied that he knew Sandra Dumont. When the police asked him if he killed her, he replied: "I didn't do it. I can't swear to God that I didn't do it, but I didn't." There was evidence that Dumont had been seen talking with Fain at a nightclub and had attended a party at Fain's house. Jill O'Donnell Wilkes testified that Fain admitted to her that he was having a sexual affair with Dumont. John Cochrun gave similar testimony.

Fain lived approximately one mile from the field where Dumont's body was found. A search of his home turned up a roll of film; when developed it contained a photograph of the field. The police also found in appellant's home a leather pouch containing .22 caliber bullets. James Thompson, the son of one of Fain's admitted lovers, testified that he had seen Fain shoot a .22 caliber pistol that he identified as being owned by Fain's wife, Debra. Another witness had observed the leather pouch in Fain's truck and had seen .22 caliber shells in Fain's home.

Sunny Thompson, mother of James, acknowledged that she and Fain had had a lengthy sexual relationship. She testified that she was with Fain in his home from 10:00 p.m. on the night of July 24 until 3:00 a.m. the next morning. The jury did not find this alibi credible.

### Hearing on Motion for New Trial

The trial judge did not schedule a hearing on appellant's motion for new trial until the motion had been overruled by operation of law. In his first point of error, appellant claims that he was denied due course of law by this failure.

Fain was sentenced on April 3, 1995. Trial counsel withdrew and new appellate counsel was appointed on April 10, 1995. On May 2, 1995, within the prescribed 30–day period, counsel filed both a motion and an amended motion for new trial. See Tex.R.App. P. 21.4 (formerly Rule 31(a)(1)).[16] The amended motion was overruled by operation of law when it was not heard within 75 days of sentencing. See Tex.R.App. P. 21.8(c) (formerly Rule 31(e)(1), (3)); State ex rel Cobb v. Godfrey, 739 S.W.2d 47, 50 (Tex.Crim.App.1987). This would have been June 17, 1995; subsequently, the trial court lost jurisdiction. Any hearing beyond that date would have been a nullity. See Cobb, 739 S.W.2d at 50; Garza v. State, 904 S.W.2d 877, 878–79 (Tex.App.—Corpus Christi 1995), aff'd, 931 S.W.2d 560 (Tex.Crim.App.1996).

Appellant acknowledges that the amended motion for new trial was overruled by operation of law on June 17, 1995, but calls our attention to assertions made in his "Motion For Out–Of–Time Hearing On Motion for New Trial." This motion alleged that the motion for new trial was set for a hearing on June 30, 1995 by agreement of the trial court, the prosecutor, and the defense counsel, all of whom believed this hearing date was timely. The confusion was engendered by calculating the seventy-five day period from the filing of a *pro se* motion for new trial on April 20, 1995. Counting forward

from this date, Fain insists that he was still entitled to a hearing on his amended motion for new trial.

 The trial court did not have jurisdiction to entertain the motion for an out-of-time hearing. Moreover, the assertions therein do not prove themselves. Assertions not supported by the record will not be accepted as fact. See Miranda v. State, 813 S.W.2d 724, 738 (Tex.App.—San Antonio 1991, pet. ref'd). Cases on appeal are not decided on assumptions or estimates about the record. See Jenkins v. State, 912 S.W.2d 793, 821 (Tex.Crim.App.1993). Most importantly, even if the assertions in the motion could be accepted as fact, appellant failed to preserve his complaint that the trial court should have held a timely hearing by not objecting to any untimely setting. See Baker v. State, 956 S.W.2d 19, 24–25 (Tex.Crim. App.1997). The first point of error is overruled.

### Ineffective Assistance of Counsel

In the second point of error, appellant claims that he was denied the effective assistance of counsel on appeal when his counsel "miscalculated the date that appellant's motion for new trial would be overruled by operation of law." This point was briefed together with the first point of error; the complaint is directed against Fain's first appellate attorney, and not to appellant's trial counsel or present appellate counsel.

 The burden of proving ineffective assistance by a preponderance of the evidence rests upon the convicted defendant. See McFarland v. State, 845 S.W.2d 824, 842 (Tex.Crim.App.1992), cert. denied, 508 U.S. 963, 113 S.Ct. 2937, 124 L.Ed.2d 686 (1993). Failure to make the required showing of either deficient performance or sufficient prejudice defeats the ineffective assistance claim. See Strickland v. Washington, 466 U.S. 668, 700, 104 S.Ct. 2052, 80 L.Ed.2d 674

---

16. On August 15, 1997, the Court of Criminal Appeals approved the new Rules of Appellate Procedure, effective September 1, 1997. See Misc. Docket 97–9139 (Tex.Crim.App. Aug. 15, 1997). The order provides that the new rules are applicable to pending appeals on September 1, 1997, unless their application in a particular proceeding would not be feasible or would work an injustice.

(1984).[17] The two-pronged *Strickland* test has been adopted in Texas for resolving allegations of ineffective assistance of counsel under both the federal and state constitutions. *See Hernandez v. State*, 726 S.W.2d 53, 57 (Tex.Crim.App.1986). The *Strickland* standard is to be evaluated by the totality of the representation rather than by isolated acts or omissions of trial counsel. *See Wilkerson v. State*, 726 S.W.2d 542, 548 (Tex. Crim.App.1986), *cert. denied*, 480 U.S. 940, 107 S.Ct. 1590, 94 L.Ed.2d 779 (1987); *Banks v. State*, 819 S.W.2d 676, 681 (Tex.App.—San Antonio 1991, pet. ref'd). *Strickland* has never been interpreted to entitle an accused to errorless or perfect counsel. *See Bridge v. State*, 726 S.W.2d 558, 571 (Tex.Crim.App. 1986).

 An appellate court is normally bound by the record before it. *See Miranda*, 813 S.W.2d at 738. Allegations of ineffective assistance will be sustained only if they are firmly founded in the record which affirmatively demonstrates the alleged ineffectiveness. *See McFarland v. State*, 928 S.W.2d 482, 500 (Tex.Crim.App.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997). Appellant has not directed our attention to anything in the record supporting his claim of miscalculation except the assertions in the motion for an out-of-time hearing on the motion for new trial, which cannot be accepted as fact. Without any basis in the record for his isolated claim of miscalculation, appellant has not met *Strickland*'s two-pronged test for evaluating ineffective assistance of counsel claims under the Sixth Amendment. *See Strickland*, 466 U.S. at 690, 104 S.Ct. 2052. The second point of error is overruled.

### Hearsay Testimony

 Appellant's third point of error urges that the trial court erred in admitting the testimony of Laura Patterson. This witness testified that she and Sandra Dumont attended high school together in Vermont, and had stayed in touch afterwards. When Dumont moved to Austin she lived with Patterson until she found her own apartment. Patterson revealed that she and Dumont often discussed personal aspects of their lives, sharing details of their personal and professional relationships.

On July 10, 1994, Patterson was taking Dumont to the bus station; on the way they had a conversation about personal relationships, which was not unusual for the two friends. Patterson testified that Dumont seemed frustrated by the way things were going with Roger Fain. The State asked Patterson if Dumont expressed her intent concerning the future of this relationship. The court overruled appellant's hearsay objection. Patterson testified that Dumont told her that despite the problems, she intended to continue her relationship with Fain.

Appellant contends that the objected-to hearsay had no probative value and did not fall within any exception to the hearsay rule. The State urges that Patterson's testimony was admissible under the state-of-mind exception to the hearsay rule. *See* Tex.R. Evid. 803(3). That rule provides in pertinent part:

> The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
>
> (3) **Then existing mental, emotional, or physical condition.** A statement of the declarant's then existing state of mind, emotion, sensation, or physical condition (such as intent, plan, motive, design, mental feeling, pain, or bodily health), but not including a statement of memory or belief to prove the fact remembered or believed unless it relates to the execution, revocation, identification, or terms of declarant's will.

In *Pena v. State*, 864 S.W.2d 147, 149–50 (Tex.App.—Waco 1993, no pet.), the court relied on Rule 803(3) to allow a witness to recount a murder victim's statements that she wanted to leave the defendant but felt economically trapped; the court said that

---

17. In order to show ineffective assistance of counsel under *Strickland*, an appellant must show: (1) that his trial counsel's performance was deficient in that counsel made such serious errors that he or she was not functioning effec-

tively as counsel; and (2) that the deficient performance prejudiced the defense to such a degree that the appellant was deprived of a fair trial.

this reflected her state of mind. *See also Green v. State,* 839 S.W.2d 935, 942 (Tex. App.—Waco 1992, pet. ref'd) (state of mind exception to hearsay rule applies to statements admitted to prove declarant subsequently acted in accordance with state of mind); *see generally* 2 Steven Goode, Olin G. Welborn, III & M. Michael Sharlot, *Guide To The Texas Rules of Evidence: Civil and Criminal,* 803.7 at 136–140 (Texas Practice 1993); Hulen D. Wendorf, David A. Schleuter & Robert R. Barton, *Texas Rules of Evidence Manual,* Rule 803(3) at VIII–57 (3d ed.1994).

■ The complained-of evidence was offered to show the victim's state of mind on July 10, some two weeks before her disappearance, as to her intent to continue her relationship with Fain. The admissibility of an out-of-court statement under an exception to the general hearsay exclusion rule is within the trial court's discretion. *See Lawton v. State,* 913 S.W.2d 542, 553 (Tex.Crim.App. 1995), *cert. denied,* 519 U.S. 826, 117 S.Ct. 88, 136 L.Ed.2d 44 (1996). The trial court did not abuse its discretion in admitting the evidence in question.

■ Moreover, inadmissible testimony can be rendered harmless if the same or similar evidence is admitted without objection at another point in the trial. *See Mayes v. State,* 816 S.W.2d 79, 88 (Tex.Crim.App. 1991). On cross-examination, appellant's counsel elicited from Patterson that prior to July 10, she and Dumont had discussed Dumont's relationship with Fain five or six times. Penny Diaz testified that she saw appellant and Dumont talking in a club called Rumors. Gary Zimmerman saw them together at a party at appellant's house. John Cochrun testified that Fain knew Dumont. Jill O'Donnell Wilkes stated that Fain admitted that he had a sexual relationship with Dumont. Any error in the admission of the objected-to evidence was rendered harmless by appellant's failure to object to similar evidence at other times during the trial. The third point of error is overruled.

### Evidence of Witness's Law Enforcement Background

■ In the fourth point of error, appellant contends that the trial court erred in permitting the State to introduce the testimony of Terry Vinson, as it indirectly informed the jury that appellant had previously been in trouble with the law. Terry Vinson was a deputy sheriff from Cameron County. In a colloquy to the bench, the prosecutor outlined the testimony that Vinson would give. Appellant's trial counsel indicated concern but expressly stated that he "had no problem" with Vinson testifying that he had experience in searching fields, that he knew appellant and knew the brand of cigarettes appellant smoked. Defense counsel did object to identifying Vinson as a deputy sheriff from Cameron County and to any testimony about his background in law enforcement. The record does not reflect a clear-cut adverse ruling on that objection, and appellant has not pointed us to such a ruling. An adverse ruling must be conclusory; it must be clear from the record that the trial court overruled the objection or the error is not preserved. *See Powell v. State,* 897 S.W.2d 307, 310 (Tex.Crim.App. 1994), *cert. denied,* 516 U.S. 808, 116 S.Ct. 54, 133 L.Ed.2d 19 (1995); *Ramirez v. State,* 815 S.W.2d 636, 643 (Tex.Crim.App. 1991). Nevertheless, the court's ruling may be implied rather than express. *See Rey v. State,* 897 S.W.2d 333, 336 (Tex.Crim.App. 1995). During the colloquy, appellant's counsel inquired if the court was going to let the witness "jump up and tell he's a deputy sheriff ... with Cameron County." The trial court responded, "I'm going to let him do that." We conclude that this is sufficient to preserve error, if any, as to Vinson's occupation. All other complaints about Vinson's testimony were waived.

Vinson testified that he had been a deputy sheriff with Cameron County for thirteen years, where he gained expertise in searching open fields. Williamson County officials enlisted his help in searching the field where Dumont's remains were found. He related that he found a condom, a tampon, and five

Marlboro menthol cigarette butts during his investigation. Vinson also stated that he was acquainted with appellant and knew that he smoked Marlboro menthol cigarettes.[18]

 A trial court's evidentiary rulings are reviewed for abuse of discretion. *See Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990) (op. on reh'g). An abuse of discretion is established "only when the trial judge's decision was so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *Cantu v. State*, 842 S.W.2d 667, 682 (Tex. Crim.App.1992), *cert. denied*, 509 U.S. 926, 113 S.Ct. 3046, 125 L.Ed.2d 731 (1993). Moreover, error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected. *See* Tex.R. Evid. 103(a). We conclude that the trial court did not abuse its discretion in allowing the witness to reveal his occupation. The fourth point of error is overruled.

### Search of Tool Box

In his fifth point of error, appellant complains that the trial court erred in admitting "evidence illegally seized *from* a toolbox on appellant's truck" (emphasis added). Appellant's claim is based on the Fourth and Fourteenth Amendments to the United States Constitution.[19] Both appellant and the State have briefed the question presented on the basis of the validity of the warrantless seizure of the truck and subsequent warrantless search of the truck at the police station. Appellant does not reveal the evidence "from" the tool box to which he makes reference in his point of error. The trial court withheld its ruling on the pretrial motion to suppress evidence resulting from the search of appellant's pickup truck. During trial, and out of the presence of the jury, the court conducted a hearing on the matter, then

overruled the objection and denied the motion to suppress.

Lieutenant Dan LeMay of the Round Rock Police Department was the only witness at the hearing. The evidence shows that on August 17, 1994, after returning from a trip to Florida, Fain spent the night at the apartment of his estranged wife in Austin. In the early hours of the morning he was awakened by police officers who had a warrant for his arrest. His pickup truck was in the parking lot of the apartment complex; from their surveillance, the police knew that appellant's wife had been driving the truck.

██ There was a large white tool box in plain view in the bed of the truck, which the police had observed before on many occasions. The officers seized the truck without a warrant and removed it to the Round Rock police station, where it was searched. When asked why the truck had been seized, Lt. LeMay related appellant's story that the lid of the tool box had caused the injury to his broken hand. He did not testify that he or any one else believed that the truck contained contraband or evidence of the instant offense. Probable cause to arrest does not automatically provide probable cause to search, although some of the information may be relevant. *See United States v. Jones*, 994 F.2d 1051, 1055 (3d Cir.1993); Wayne R. LaFave, *Search and Seizure, A Treatise on the Fourth Amendment*, § 3.1(b), at 7 (3d ed. West 1996).

Even if it could be said, as appellant argues, that the warrantless search was without probable cause and invalid, the error in the admission of any fruits of the search was harmless error under the circumstances presented. If there is an invalid search but none of the evidence seized is offered into evidence, no error occurs. In the instant

18. It was not revealed to the jury that Vinson had been an investigating officer of an offense of which appellant had been convicted.

19. Appellant does not present a separate point of error contending that the state constitutional provision on search and seizure offers greater protection than its federal constitutional counterpart. Moreover, appellant has not proffered specified argument and authorities supporting such contention. If this is appellant's argument, it is inadequately briefed and will not be ad-

dressed. *See* Tex.R.App. P. 38.1(h) (replacing former Rule 74(d)); *Moore v. State*, 935 S.W.2d 124, 128 (Tex.Crim.App.1996); *Robinson v. State*, 851 S.W.2d 216, 222 n. 4 (Tex.Crim.App.1991), *cert. denied*, 512 U.S. 1246, 114 S.Ct. 2765, 129 L.Ed.2d 879 (1994); *Heitman v. State*, 815 S.W.2d 681, 690 n. 23 (Tex.Crim.App.1991); *McCambridge v. State*, 712 S.W.2d 499, 501–02 n. 9 (Tex.Crim.App.1986); *Tell v. State*, 908 S.W.2d 535, 539 (Tex.App.—Fort Worth 1995, no pet.).

case, appellant has limited his point of error to evidence seized *from* the tool box but he does not tell us what these items were or direct our attention to the record where such items were introduced. If the evidence seized *from* the tool box was not introduced, then no error is presented.

■ Moreover, it was not the State but appellant who first elicited evidence of the search of the pickup truck. On the cross-examination of Steve Robertson, a chemist with the Department of Public Safety, appellant developed the fact that Robertson had participated in the warrantless search and had recovered "quite a few hairs." After conducting a hair analysis, Robertson determined that none of the hair removed from the pickup truck matched Dumont's hair samples. The State then introduced two photographs of the truck taken after its seizure, arguing that appellant had opened the door to this evidence. Katherine Zeller, a DPS employee, testified that DNA analysis revealed that cigarette butts found in the truck belonged to appellant and no one else. This evidence was non-incriminatory and consistent with other evidence that appellant was a smoker. The State did introduce the tool box itself into evidence, demonstrating the rubber padding under the lid to discredit appellant's story that the falling lid had injured his hand.

■ Under the rule of optional completeness, when part of an act is given in evidence by one party, the other party may introduce the rest of the act and any other acts necessary to make it fully understood. *See* Tex.R. Evid. 107. Here, appellant first elicited evidence of the search and the partial fruits of that search favorable to him. The State was then properly permitted to inquire into the same subject matter. *See id.* Even if Rule 107 was inapplicable, any error in admitting the tool box was harmless beyond a reasonable doubt. *See* Tex.R.App. P. 42.2(a) (formerly Rule 81(b)(2)). Prior to the seizure of the truck, several officers had seen the truck and the tool box in plain view and observed the tool box's features. The introduction of the tool box and its rubber-padded lid was unnecessary to discredit appellant's explanation to the police of his injury because that

version had been undermined by appellant's conflicting stories to other witnesses. If there was any error in the admission of any evidence complained of, we conclude that the error was harmless beyond a reasonable doubt and did not contribute to appellant's conviction or punishment. The fifth point of error is overruled.

### Extraneous Act

In his sixth point of error, appellant contends that the trial court erred in admitting, over timely objection, evidence of an extraneous act when the State failed to give Fain notice as required by Rule 404(b) of the Texas Rules of Evidence.

Penny Diaz worked as a bartender at a club called Rumors; Fain's wife, Debra, also tended bar in this club. Diaz testified that Fain frequented the club and that Dumont had also been a "loyal customer," coming in with certain associates from her work. She related that Fain often visited with this group and that she had seen appellant talking alone with Dumont on two occasions. She stated that Fain talked more with the women than the men, and often flirted with women in the club, including Diaz herself. As Diaz began to relate a telephone conversation from Fain, defense counsel objected. The prosecutor then argued to the court: "We intend to show that he calls women and asks them to meet him places. And if we show that he has a tendency to meet places [sic], that it's likely he met Sandra [Dumont] at the field." Appellant objected that this was evidence of other wrongful acts being used "to prove the character of a person in order to show that he acted in conformity therewith" contrary to Rule 404(b), and that he had not been given the requisite notice. Tex.R. Evid. 404(b). Appellant's objections were overruled.

Diaz, a married woman, testified that sometime around September 1993, Fain telephoned her near midnight and asked her to pick him up because his truck lights had gone out. He suggested that he would get some beer and they could drive to the lake and talk. He explained that he and his wife had had an argument. Diaz refused to go. When appellant called back, Diaz agreed to

meet him (to get him off the phone), but she did not pick him up and did not know how Fain got home.

The State contends that the telephone conversations did not show "other crimes, wrongs, or acts" on appellant's part and thus were not barred by Rule 404(b). Appellant argues Rule 404(b) excludes more than criminal offenses or misconduct. *See Bishop v. State*, 869 S.W.2d 342, 345 (Tex. Crim.App.1993). We agree. The intent of this rule is to prevent the introduction of evidence to prove the character of a person in order to show that the individual acted in conformity with that character. This prohibition applies to evidence of extraneous acts or transactions as well as to evidence of extraneous offenses. *See Bishop*, 869 S.W.2d at 345. Appellant contends that the telephone conversations carried the obvious implication that appellant intended to have sexual relations with a married friend of his wife. He urges that the conviction must be reversed because of the admission of Diaz's testimony concerning Fain's telephone propositions.

Error on appeal, however, cannot be predicated upon a ruling admitting evidence unless a substantial right of the objecting party has been affected. *See* Tex.R. Evid. 103(a). Moreover, Rule 44.2(b) provides that any non-constitutional error, defect, irregularity, or variance that does not affect substantial rights must be disregarded. Tex. R.App. P. 44.2(b).[20] The State argues that any ugly connotations from Diaz's testimony were dispelled on cross-examination, which revealed her continuing cordial relationship with both Fain and his wife even after these telephone conversations. Evidence was adduced that Diaz spent the night with Fain and his wife on two occasions following arguments with her husband; that at Diaz's request appellant had assisted her in resolving a problem with her car; and that Diaz had photographs of her new baby taken with appellant and his wife. In addition, Sunny Thompson testified that she had a long-time affair with appellant and kept a diary of their sexual liaisons. Diane Yarbrough admitted

having had an affair with appellant and related that she had had sex with appellant near the field where Dumont's remains were found. Jill O'Donnell Wilkes testified that she was aware of appellant's sexual relationship with Dumont. We conclude that appellant's substantial rights were not affected by the introduction of Diaz's testimony, which only hinted at improper sexual advances by appellant. The sixth point of error is overruled.

### CONCLUSION

The informal change of venue accomplished in this case did not deprive the trial court of jurisdiction and was not fundamental error. Through his written agreement of waiver and by failing to object at trial, appellant waived any error on that ground. We therefore hold that the unassigned point of error relied on by the panel does not require reversal of this cause. Furthermore, the six points of error assigned by appellant are without merit. We affirm the judgment of conviction.

JOHN F. ONION, Jr., Justice, dissenting.

I respectfully dissent. As author of the original panel opinion for this Court, I firmly believe that the instant case was properly disposed of in that opinion on the basis of the unassigned error. The issue presented is whether the 277th Judicial District Court of Williamson County, with the instant murder case pending on its docket, could constitutionally and legally sit and try the case in Smith County rather than in Georgetown, the county seat of Williamson County.

This case presents a highly unusual set of facts and procedures unlike any other case discoverable in research. There was no change of venue as authorized by law. Ordinarily, a change of venue in a felony case involves the transfer of the *case* by a district court to another district court in another county. *See generally* Tex.Code Crim. Proc. Ann. ch. 31 (West 1989 & Supp.1999). The receiving court acquires jurisdiction of the case upon receipt of the indictment and the transferring court loses jurisdiction of the case. In this case, we are not confronted

---

**20.** Rule 44.2(b) relating to non-constitutional error replaces former Rule 81(b)(2).

with the original trial judge, who, by exchange of benches or administrative assignment, traveled to preside in another district court that had acquired jurisdiction over the transferred case. What happened in the instant case was that the 277th Judicial District Court of Williamson County, with this case pending on its docket, pulled up stakes and moved to Smith County and tried this case with Smith County jurors. It was not the *case* that was transferred as in a change of venue, but the *court* that moved out of its territorial limits. The action taken violated the statute that created the 277th Judicial District Court and limited its existence to Williamson County. *See* Tex. Gov't Code Ann. § 24.454(a) (West Supp.1999). Parties by agreement, consent, or waiver cannot confer jurisdiction on a court or expand its territorial limits. *See Ex parte Smith,* 650 S.W.2d 68, 69 (Tex.Crim.App.1981); *Lackey v. State,* 574 S.W.2d 97, 100 (Tex.Crim.App. 1978); *Miller v. State,* 909 S.W.2d 586, 592 (Tex.App.—Austin 1995, no pet.). There is also the constitutional mandate that a district court "shall conduct its proceedings at the county seat of the county in which the case is pending except as otherwise provided by law." Tex. Const. art. V, § 7. The panel opinion held that the trial court lacked authority and power to adjudicate the rights of the parties when it conducted the trial beyond its territorial limits. The judgment rendered was null and void. To render a valid judgment and sentence in a criminal case the trial court must have jurisdiction of both the subject matter and the person of the defendant, and it must have the authority to render the particular judgment. A district court has no authority or power to adjudicate the rights of litigants except at the time and places prescribed by law. *See Lyons Thomas Hardware Co. v. Perry Stone Mfg. Co.,* 88 Tex. 468, 27 S.W. 100, 109 (Tex.1894); *Stine v. State,* 908 S.W.2d 429, 431 (Tex.Crim.App. 1995). If any of these factors are lacking, the judgment is fatally defective. *See Ex parte Kenzie,* 115 Tex.Crim. 315, 29 S.W.2d 771, 772 (1930); *Ex parte Degener,* 30 Tex. App. 566, 17 S.W. 1111 (1891); 22 Tex. Jur.3d § 1898, at 26 (1982).

The question of whether the district court complied with article V, section 7 of the Texas Constitution is a constitutional issue that is jurisdictional and non-waivable. *See Stine,* 908 S.W.2d at 433; *Anderson v. State,* 930 S.W.2d 179, 181 (Tex.Crim.App.—Fort Worth 1995, pet. ref'd). Venue is distinct from jurisdiction. The latter concerns the power of the court to hear and determine the case. Venue means the place where a case may be tried. *See Ex parte Watson,* 601 S.W.2d 350, 351 (Tex.Crim.App.1980); *Martin v. State,* 385 S.W.2d 260, 261 (Tex.Crim. App.1964) (op. on reh'g). "Ordinarily, [venue] refers to a county and determines the county or counties in which the State is permitted to file its charges and to prosecute them." 40 George E. Dix and Robert O. Dawson, *Criminal Practice and Procedure,* § 2.01 at p.63 (Texas Practice 1995) (hereinafter Dix). "The general principle is that venue lies in the county in which the offense was committed and only in that county." Dix, § 2.11 at 66.

Article III, section 45 of the Texas Constitution provides: "The power to change venue in civil and criminal cases shall be vested in the courts, to be exercised in such manner as shall be provided by law; and the Legislature shall pass laws for that purpose." A court cannot change venue if the legislature has not acted. *See* Interpretative Commentary, Tex. Const. art. III, § 45 (West 1993). Most change of venue rules appear in Chapter 31 of the Texas Code of Criminal Procedure. This "[c]ode also creates a general venue principle that venue should lie in the county in which the offense was committed. That provision controls in the absence of any special provision dealing with particular offenses or situations." Dix, § 2.07 at 65–66.

Unlike jurisdiction, improper venue may be waived by failure to object or may be acquired by consent. *See Watson,* 601 S.W.2d at 351. As noted, jurisdiction cannot be conferred by agreement or waiver. Moreover, the factors of jurisdiction have also been mentioned. Today's majority opinion describes the trial court's failure to order a formal change of venue as a procedural mistake that was a statutory violation, not a constitutional one; that the defect did not affect the trial court's jurisdiction over the case; that a transfer of venue defectively

accomplished does not raise the constitutional concerns of *Stine* (finding a violation of article V, section 7 of the state constitution), and that the error was not jurisdictional. *See* slip. op. 9, 10, 14, 16 and 18.

If a legal change of venue was somehow accomplished in this case prior to trial in Smith County, one concern would be whether this Court has jurisdiction of this appeal without a proper order transferring the case back to Williamson County. *See* Tex.Code Crim. Proc. Ann. art. 31.08(c) (West Supp. 1999). The majority opinion responds to this concern by stating: "Because venue was never formally changed to Smith County, there is also no formal order transferring the case back to Williamson County. As a consequence, the present appeal was brought to this Court from Williamson County." *See* slip. op. 3, n.2.

In order that the position of the dissent be fully understood, the bulk of the panel opinion of March 12, 1998, unchanged, is adopted and incorporated as a part of this dissenting opinion as follows: [1]

### UNASSIGNED ERROR

Independent of the points of error, we reluctantly find that we are confronted at the outset with a question of the trial court's jurisdiction or authority to act, a question of state constitutional dimension, evident from the face of the appellate record. The Texas Constitution mandates that a district court "shall conduct its proceedings at the county seat of the county in which the case is pending except as otherwise provided by law." Tex. Const. art. V, § 7. A district court has no power to adjudicate the rights of litigants except at the time and places prescribed by law. *Lyons Thomas Hardware Co. v. Perry Stone Mfg. Co.*, 88 Tex. 468, 27 S.W. 100, 109 (Tex.1894); *Stine v. State*, 908 S.W.2d 429, 431 (Tex.Crim.App.1995). The record reflects that the 277th District Court of Williamson County with the instant case pending on its docket convened in Smith County to conduct the trial which resulted in this judgment of conviction.

Jurisdiction is a matter of law. *Bayoud v. North Cent. Inv. Corp.*, 751 S.W.2d 525, 528 (Tex.App.—Dallas 1988, writ denied). The question of jurisdiction is fundamental, *see Tullos v. Eaton Corp.*, 695 S.W.2d 568, 568 (Tex.1985), and a lack of jurisdiction may be questioned at any stage of the proceedings, even on appeal. *Methodist Hospitals of Dallas v. Texas Workers' Compensation Comm.*, 874 S.W.2d 144, 149 (Tex.App.—Austin 1994, no writ); *Lopez v. State*, 756 S.W.2d 49, 51 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd). This is true in both civil and criminal matters. *Ex parte Rogers*, 820 S.W.2d 35, 37 (Tex.App.—Corpus Christi 1991, no pet.).

While the above cited cases speak of "jurisdiction" in the terms of subject matter jurisdiction and personal jurisdiction, it logically follows that the lack of jurisdiction may be raised at any time where the court has both subject matter and personal jurisdiction but acts beyond its constitutional or legal territorial boundaries or limits, or lacks the authority or power to try a case and render a valid judgment. Moreover, having acquired jurisdiction of an appeal of a criminal conviction, Texas courts of appeals may entertain unassigned error. Exercise of reviewing functions is limited only by the appellate court's own discretion or valid restrictive statute. *See Carter v. State*, 656 S.W.2d 468, 469–70 (Tex.Crim.App.1983); *State v. Lara*, 924 S.W.2d 198, 201 n. 3 (Tex.App.—Corpus Christi 1996, no pet.); *see also Lopez v. State*, 708 S.W.2d 446, 448 (Tex.Crim.App. 1986); *Barney v. State*, 698 S.W.2d 114, 123 (Tex.Crim.App.1985); *Garza v. State*, 676 S.W.2d 185, 187 (Tex.App.—Corpus Christi 1984, pet. ref'd) (holding the authority of a court of appeals to consider unassigned error in criminal cases is not open to question); *see generally*, 43 George E. Dix & Robert O. Dawson, *Criminal Practice and Procedure*, § 43.302 at 268 (Texas Practice 1995).

---

1. The commencement of the panel opinion is eliminated because the same information is now contained in today's majority opinion. It will be apparent that the panel opinion was writing as a majority opinion. Particularly, the use of the word "We" should be understood as meaning the "dissent." No effort will be made to update any citation later than March 12, 1998.

## THE QUESTION PRESENTED

The indictment upon which this conviction was obtained charged Roger Eugene Fain with the murder of Sandra Dumont. The indictment was returned to the 277th District Court of Williamson County and alleged that the offense occurred in Williamson County. Appellant's trial was conducted in the 277th District Court sitting in Smith County. Appellant's conviction resulted from the verdict of Smith County jurors. There was no formal or informal change of venue of the cause to a district court of Smith County. The question presented is whether the 277th District Court of Williamson County, with the case still pending on its docket, could constitutionally and legally sit and try the case in Tyler, the county seat of Smith County, rather than in Georgetown, the county seat of Williamson County.[2]

Because of our concern about this unusual procedure, we requested supplemental briefs from the parties addressing the following questions:

Was there a formal change of venue to Smith County? If so, does this Court have jurisdiction of the appeal in the absence of an order returning to Williamson County? See Tex.Code Crim. Proc. art. 31.08 (West Supp.1998).

If there was no formal change of venue, did the 277th District Court violate article V, section 7 of the Texas Constitution by trying the cause in Smith County? If there was a constitutional violation, were the proceedings void? [citations omitted].

From our study of the record, the supplemental briefs, and the law, we conclude that there was no change of venue. We are further compelled to conclude that by trying the case in Smith County without a change of venue, the Williamson County district court violated the constitution and its proceedings were void.

## PROCEDURE FOLLOWED

The original indictment in cause 94–671–K277 was returned on September 6, 1994. On November 2, 1994, the trial court conducted a hearing on appellant's motion for a change of venue and took the matter under advisement. The next day the trial court made a docket sheet entry that the motion was granted and that "the court will look to the adjoining judicial districts for an available facility in late February or early March 1995."

On December 12, 1994, the trial court announced it had an order changing venue of the cause to Smith County. After some discussion, the trial court indicated it would render the order after the beginning of 1995 when appellant brought the issue "back to court." On January 23, 1995, appellant and the State executed an instrument labeled "Agreement And Consent To Trial of Case in Smith County, Texas, Without Formal Order Transferring Venue." On the same date the trial court signed an order directing the Sheriff of Smith County to summon 400 persons "to appear before this Court sitting in Smith County" on March 20, 1995, at 9:00 a.m. for the purpose of selection of a jury in the instant case. The names of the persons summoned were ordered drawn from Smith County jury wheel. The order commenced by stating that the agreement between the parties had been "approved" by the trial court allowing trial in Smith County without formal transfer of venue "and with the case remaining on the docket of this court."

On February 23, 1995, appellant was re-indicted for murder by a Williamson County grand jury in cause number 95–112–K277. On March 1, 1995, the trial court rendered

2. The original briefs were silent as to the fact that the instant case was tried in Smith County. During oral argument before this Court, that fact was acknowledged. Assuming a change of venue, we inquired whether a post-trial order was entered returning the cause to the original county where the indictment had been filed. See Tex.Code Crim. Proc. Ann. art. 31.08 (West Supp.1998). The State's attorney assured this Court that such an order was in the appellate record. Subsequently, no such order was found in the record, and the District Clerk of Williamson County has now certified to this Court that no such order appears in the record of appellant's case. The State's attorney has admitted that his earlier statement was in error, and that only a pretrial order was entered. If there had been a change of venue without such an order, the jurisdiction of this appeal would be in the Twelfth District Court of Appeals at Tyler. See Tex.Code Crim. Proc. Ann. art. 31.08(3) (West Supp.1998).

an order, at appellant's request, adopting all orders and rulings in former cause no. 94–631–K277. On March 13, 1995, the parties entered into another "Agreement and Consent To Trial of Case In Smith County, Texas, Without Formal Order Transferring Venue." It was again "approved" and then "ordered" by the trial court. The agreement was identical to the earlier agreement entered on January 23, 1995, save for the word "ordered." Because of its importance, the agreement is set out in pertinent part:

By their execution hereof, the State of Texas acting by and through its Assistant District Attorney and the Defendant acting individually and through his attorney of record, do stipulate, agree and enter into waivers as follows:

1. The Defendant has filed a Motion for Change of Venue. On November 2, 1994, a hearing was held on that motion. The Court heard evidence, concluded that a change of venue was appropriate, and announced that the request for change of venue would be granted.

2. The Defendant desires that the jury trial be conducted outside of Williamson County, however, both parties agree that all other matters should be conducted in Williamson County whenever possible and practicable.

3. The Court has delayed the execution of a formal order transferring venue and that such delay has occurred at the request of and for the convenience of both the Defendant and the State by allowing pre-trial motions and other matters to continue to be heard in Williamson County, Texas.

4. There are pending pre-trial motions that still need to be heard and further motions are expected.

5. The rights of the Defendant and the State will not be impaired or prejudiced by continuing to be able to have pre-trial matters heard in Williamson County, Texas, and both the State and the Defendant request that pre-trial matters continue to be heard in Williamson County until the calling of the case for trial, currently scheduled to begin on March 20, 1995.

6. In order for trial to begin as scheduled, it is necessary to have a jury panel summoned at this time, which cannot be done unless the Court at this time formally transfers venue to Smith County or unless the State and the Defendant agree to a trial of the case in Smith County, Texas using a jury panel summoned by Smith County, Texas *with the case remaining a Williamson County, Texas case.*

7. Both the Defendant and the State specifically agree that the trial of the case may be had in Smith County, Texas the same as if the court entered an order transferring venue, but without formal transfer occurring and *with the case remaining on the docket of the court in Williamson County, Texas.*

8. It is further agreed that the Sheriff, District Clerk and any District Judge of Smith County, Texas may summon a jury panel consisting of qualified jurors in Smith County for a trial of the case, such selection of prospective jurors to be accomplished by the use of a random selection from the existing jury wheel in Smith County.

9. It is further agreed that the District Clerk of Smith County may furnish to the District Clerk of this Court, a certified copy of the list of persons summoned as veniremen which shall be filed by the Clerk of this Court in the proceedings herein

10. The State and the Defendant waive any and all rights to a formal transfer of venue to Smith County and waive any and all rights to complain of the failure of the Court to formally transfer venue to Smith County; provided that the Defendant shall have the same rights, if any, to complain of such venue change which he would have had if formal transfer of venue to Smith County were done, and by the Defendant signing this document it is understood that the Defendant is not waiving his right to complain of the transfer of venue to Smith County

provided such complaint is raised prior to trial.

(Emphasis added.)

Also on March 13, 1995, an "Agreed Order for Venire" was signed by the judge of the 277th District Court of Williamson County ordering the Smith County District Clerk to summon a jury panel before the 277th District Court on March 20, 1995, for the purpose of voir dire examination in this cause. The order commenced with the following statement:

Upon stipulation, agreement and waiver entered into by the Defendant and the State and approved by the Court, allowing trial of this case in Smith County, Texas without formal transfer of venue *and with the case remaining on the docket of this Court,* ...

(Emphasis added.) The order was approved as to form and substance by the parties.

No order, formal or informal, was ever entered changing venue to a designated district court in Smith County. The clerk's duties upon a change of venue as required by article 31.05 were not performed nor was an order entered as required by article 31.06 when the accused is in custody as appellant was in the instant case. Tex.Code Crim Proc. Ann. arts. 31.05, 31.06 (West 1989). "The jurisdiction of the court to which the case is transferred [upon a change of venue] depends upon the receipt of the indictment." 41 George E. Dix & Robert O. Dawson, *Criminal Practice and Procedure,* § 25.106 at 688 (Texas Practice 1995). No district court in Smith County acquired jurisdiction. The statutory procedure for a change of venue was not followed.

There was in fact no change of venue. The cause was never transferred; rather, the trial court changed its location. The record shows that appellant's trial was conducted by the 277th District Court of Williamson County and its regular judge and court personnel while sitting at Tyler, the county seat of Smith County, utilizing Smith County jurors. The cause retained its same number and remained pending on the docket of the 277th District Court when that court moved its base of operation outside its judicial district[3] to another county in a different administrative judicial region.[4]

The record does not reveal why the trial court engaged in this experimental procedure in this highly publicized case. The agreement used is unusual and unsupported by legal authority. It presents internal conflicts between the traditional change of venue and the action which in reality was undertaken. In addition to having appellant agree to delay an order changing venue, the agreement attempts to have appellant waive, although not in straightforward language, any requirement that the 277th District Court conduct the proceedings in question at the county seat of Williamson County. Such a waiver is not valid, and such an agreement is not a change of venue.

## JURISDICTION

In Texas, only the constitution and the laws adopted by the legislature can grant jurisdiction to the courts. *Curry v. Wilson,* 853 S.W.2d 40, 45 (Tex.Crim.App.1993); *State v. Johnson,* 821 S.W.2d 609, 612 (Tex. Crim.App.1991); *Stine v. State,* 935 S.W.2d 443, 444 (Tex.App.—Waco 1996, pet. ref'd). Jurisdiction is the authority or power conferred upon a court by the constitution and laws of the state which allows a court to try a case and adjudicate litigants' rights and render a judgment. *See National Life Co. v. Rice,* 140 Tex. 315, 167 S.W.2d 1021, 1024 (Tex.1943); *Stine,* 935 S.W.2d at 444; *Skillern v. State,* 890 S.W.2d 849, 859 (Tex. App.—Austin 1994, pet. ref'd).

District courts in Texas have original jurisdiction over all felony cases. Tex. Const. art.

---

**3.** The 277th Judicial District is composed of only Williamson County. *See* Tex. Gov't Code Ann. § 24.454(a) (West Supp.1998). The current code is cited for convenience. The applicable law is Act of May 17, 1985, 69th Leg., R.S., ch. 480, § 1, 1985 Tex. Gen. Laws 1720, 1782 (Tex. Gov't Code § 24.454(a), since amended, but unchanged).

**4.** Smith County is a part of the First Administrative Judicial Region, Tex. Gov't Code Ann. § 74.042(b) (West 1998), while Williamson County is part of the Third Administrative Judicial Region. Tex. Gov't Code Ann. § 74.042(d) (West 1998).

V, § 8; Tex.Code Crim. Proc. Ann. art. 4.05 (West Supp.1998); *Boyle v. State*, 820 S.W.2d 122, 139 (Tex.Crim.App.1991) (citing *Ex parte Watson*, 601 S.W.2d 350, 351 (Tex. Crim.App.1980), *cert. denied*, 503 U.S. 921, 112 S.Ct. 1297, 117 L.Ed.2d 520 (1992)); *Skillern*, 890 S.W.2d at 859. Murder is normally a felony of the first degree. *See* Tex. Penal Code Ann. § 19.02(c) (West 1994). When the instant indictment was returned and filed in the 277th District Court of Williamson County, that court acquired jurisdiction over the subject matter of the case coupled with personal jurisdiction over appellant. *See Fairfield v. State*, 610 S.W.2d 771, 779 (Tex.Crim.App.1981). Jurisdiction not only embraces the power to hear, but includes as well the authority to enter judgment. *See Orr v. International Bk. Of Commerce*, 649 S.W.2d 769, 771–72 (Tex.App.— San Antonio 1983, no writ); *see also City of El Paso v. Madero Development*, 803 S.W.2d 396, 399 (Tex.App.—El Paso 1991, writ denied), *cert. denied*, 502 U.S. 1073, 112 S.Ct. 970, 117 L.Ed.2d 135 (1992) (there are three jurisdictional elements: jurisdiction over subject matter; jurisdiction over person or res; and power to render judgment or relief under the circumstances). Unless the power or authority of a court to perform a contemplated act can be found in the constitution, the court is without jurisdiction and its acts are without validity. *State ex rel Millsap v. Lozano*, 692 S.W.2d 470, 482 (Tex.Crim.App. 1985).

Article V, section 7 of the Texas Constitution provides in pertinent part that the district court "shall conduct its proceedings at the county seat of the county in which the case is pending except as otherwise provided by law." This language has been held to be clear and unambiguous and has been interpreted to be mandatory. *See Stine*, 908 S.W.2d at 431. The constitutional provision has been described as a "source of some rigidity." 1 George D. Braden, et al., *The Constitution of The State of Texas, An Annotated and Comparative Analysis* 406 (1977). Nevertheless, "the requirement is

not unreasonable, promotes certainty and stability, and ensures equal treatment for all parties." *Mellon Service Co. v. Touche Ross & Co.*, 946 S.W.2d 862, 868 (Tex.App.—Houston [14th Dist.] 1997, no writ).

Courts have no inherent power to ignore constitutional or statutory mandates. Courts are bound to follow the will of the people as it is expressed in the constitution and laws enacted by duly elected representatives. *Queen v. State*, 842 S.W.2d 708, 711 (Tex. App.—Houston [1st Dist.] 1992, no pet.). The people have the sole power to change or modify the plain language adopted by them. *Mellon Service Co.*, 946 S.W.2d at 867.

## A TRADITIONAL REQUIREMENT

The traditional requirement that a court should exercise its judicial function at a fixed location dates back to the time of the Magna Carta, chapter 17, granted at Runnymede, June 15, 1215. *See* A.J. Thomas, Jr. and Ann Van Wynen Thomas, *Interpretive Commentary*, Tex. Const. art. V, § 7 (West 1993) (hereinafter *"Interpretive Commentary"*); *Mellon Service Co.*, 946 S.W.2d at 868). That tradition has been followed in Texas since the early days of the Republic.[5] Section 7 of article V of the 1876 Texas Constitution was amended in 1891 to add the "county seat" requirement and was again amended in 1949 to add the exception clause.

## APPLICATION OF ARTICLE V, SECTION 7

After the 1891 constitutional amendment, Texas courts have consistently held that the change was intended to make it quite clear that a district court was not authorized to hold court outside the county seat in which the cause is pending. *See Bridgman v. Moore*, 143 Tex. 250, 183 S.W.2d 705, 708 (1944); *Ex parte Lowery*, 518 S.W.2d 897, 900 (Tex.Civ.App.—Beaumont 1975, orig. proceeding); *Isbill v. Stovall*, 92 S.W.2d 1067, 1072 (Tex.Civ.App.—Eastland 1936, no writ).[6] *See also Mellon Service Co.*, 946

---

5. *See* Republic of Texas Const. 1836, art. V, § 2; Tex. Const. 1848, art. IV, § 6; Tex. Const. 1861, art. IV, § 6; Tex. Const. 1869, art. IV, § 6; Tex. Const. 1876, art. V, § 7.

6. *See also Whitner v. Belknap*, 89 Tex. 273, 34 S.W. 594, 596 (1896) (holding unconstitutional a statute creating a Bowie County district-like court in Texarkana instead of the county seat in

S.W.2d at 868.[7] Thus, a district court has no power to adjudicate the rights of litigants except at the time and places prescribed by law. *Lyons–Thomas Hardware*, 27 S.W. at 109; *Stine*, 908 S.W.2d at 431; *Howell v. Mauzy*, 899 S.W.2d 690, 699 (Tex.App.—Austin 1994, writ denied); *Lowery*, 518 S.W.2d at 900. "There is no firmer principle established in our jurisprudence." *Lowery*, 518 S.W.2d at 900 (quoting from *State v. Orangefield Indep. Sch. Dist.*, 345 S.W.2d 823, 824 (Tex.Civ.App.—Beaumont 1961, no writ).[8] Unless authorized by law, a court may not convene outside its territorial limits and issue a judgment that is binding. *Yavapai–Apache Tribe v. Mejia*, 906 S.W.2d 152, 167 (Tex.App.—Houston [14th Dist.] 1995, no writ).

It is clear that even if a district court has acquired jurisdiction over the subject matter, i.e., a felony, and personal jurisdiction of the accused, it has no power to adjudicate the rights of litigants except at the time and places prescribed by law. *Mauzy*, 899 S.W.2d at 699. If the district court attempts to act otherwise, its proceedings will be fundamentally defective and any judgment or order based on these proceedings will be void. *Mellon Service Co.*, 946 S.W.2d at 866; *Mauzy*, 899 S.W.2d at 699. Jurisdiction, being a fundamental stricture on the power of the court, cannot be conferred by agreement, consent, or waiver, where none exists. *See Lemley v. Miller*, 932 S.W.2d 284, 286 (Tex.App.—Austin 1996, no writ); *Gonzalez v. Sanchez*, 927 S.W.2d 218, 221 (Tex.App.—El Paso 1996, no writ); *Mauzy*, 899 S.W.2d at 699; *Isbill*, 92 S.W.2d at 1071.

*Mellon Service Company* and *Mauzy* are recent examples of how strictly the constitutional provision has been applied in civil cases. *Stine*, 908 S.W.2d at 433, represents its application to a criminal case. In *Mellon*, a visiting judge was assigned to hear a consolidated suit involving several cases in the 333rd District Court of Harris County. Later the same judge, while sitting as a visiting judge in the 122nd District Court of Galveston County, with the agreement of parties, heard oral argument on motion for partial summary judgment in the Harris County suit. At the Galveston hearing, the judge granted leave to file an affidavit of an individual. Thereafter, the rest of the proceedings were completed in Harris County. On appeal appellant claimed that there had been a violation of article V, section 7 of the state constitution. The Court of Appeals agreed, holding that the trial court's proceedings were fundamentally defective and any order based thereon was void because the trial court sat outside its jurisdictional geographic area. The defect in jurisdiction could not be cured by the consent of the parties. *Mellon Service Co.*, 946 S.W.2d at 866, 870.

In *Mauzy*, Judge Guy Jones of the 202nd District Court of Bowie County was assigned to preside over a case in the 134th District Court of Dallas County. With the consent of the parties, the court convened a hearing at New Boston in Bowie County on Mauzy's plea in abatement and motion to transfer venue in the Dallas County case. The Dallas case was abated and transferred to Travis County by order of Judge Jones. These orders were held void because the court violated article V, section 7 and had no authori-

New Boston); *Turner v. Tucker*, 113 Tex. 434, 258 S.W. 149, 150 (1924) (holding unconstitutional a statute creating the Texarkana Court at Law with district court jurisdiction requiring the court to sit in Texarkana rather than the county seat).

7. The "county seat" has been held to be the place where the county courthouse is located. *Id.*

8. There is another basis for the constitutional requirement: all courts shall be open and it is for that reason that time and place are prescribed by law for its sessions. *Isbill*, 92 S.W.2d at 1070. "If the court proceedings were to be held wherever the judge or parties thought it necessary, not only would the Texas Constitution be violat-

ed, but the general public would be greatly harmed because it would lose the right to a public trial provided by law." *Stine*, 908 S.W.2d at 431. Moreover, while it certainly did not happen in the instant case, the news media might find it difficult to locate the site of the trial for the purpose of reporting on a public trial. These constitutional safeguards benefit the public, the press, and even the parties to a lawsuit. Without these restrictions future trials, perhaps involving politically sensitive matters, influential people, or defendants without supporters, could be disposed of at the scene of the crime, the home of the victim, behind the closed doors of a law firm [*Clinton ex rel Richardson v. Cornell*, 191 Okla. 600, 132 P.2d 340, 341 (1942)], or in the far reaches of the state.

ty to conduct in Bowie County proceedings connected with the Dallas County suit. *Mauzy*, 899 S.W.2d at 699–700.

In *Stine*, the defendant was indicted for attempted murder but was convicted by a jury of the lesser-included offense of aggravated assault. The trial commenced in Meridian, the county seat of Bosque County, but during trial, with the agreement of the parties, the testimony of the complainant and a doctor was taken in the same county at a hospital in Clifton. The remainder of the trial was conducted at the courthouse in Meridian. The Waco Court of Appeals in an unpublished opinion reversed the conviction, holding that article V, section 7 requirement of location is considered jurisdictional and that the parties by agreement cannot confer jurisdiction for the court to sit outside the county seat. The judgment of the court of appeals was affirmed by the Court of Criminal Appeals. *Stine*, 908 S.W.2d at 433. Although only part of the trial proceedings were conducted outside the county seat, the entire court proceeding was void.[9] The factual situation in the instant case presents a far more flagrant violation of the constitution provision than *Stine, Mauzy,* or *Mellon Service* Company

## EXCEPTIONS

This judgment of conviction can be saved only if it falls under an exception to the requirements of article V, section 7. The language "except as otherwise provided by law" was added to the constitutional provision in 1949 "to permit the legislature to confer greater flexibility in cases pending in districts embracing two or more counties." *Interpretive Commentary*, Tex. Const. art. V, § 7 (West 1993). The change resulted from the decision in *Isbill*, 92 S.W.2d at 1072. *See also Mauzy*, 899 S.W.2d at 699; *Barnhart Indep. Sch. Dist. v. Mertzon Indep. Sch. Dist.*, 464 S.W.2d 197, 201 (Tex.Civ.App.— Austin 1971, writ ref'd n.r.e.). The current statutory exception pertains only to multicounty districts. *See* Tex. Gov't Code Ann. § 24.017 (West 1988). It has no application to this cause.

The statutory procedure for change of venue, Tex.Code Crim. Proc. Ann. art. 31.01, et seq. (West 1989), is not an exception to article V, section 7. Its forerunners long predated the 1949 amendment and the statutes relating to the change of venue of a cause do not authorize a district court to sit elsewhere than the county seat. We know of no exception applicable to the peculiar circumstances of this proceeding.

We are aware, of course, of the provisions of article 31.09 of the Texas Code of Criminal Procedure which provide:

(a) If a change of venue in a criminal case is ordered under this chapter, the judge ordering the change of venue may, with the written consent of the prosecuting attorney, the defense attorney, and the defendant, maintain the original case number on its own docket, preside over the case, and use the services of the court reporter, the court coordinator, and the clerk of the court of original venue. The court shall use the courtroom facilities and any other services or facilities of the district or county to which venue is changed. A jury, if required, must consist of residents of the district or county to which venue is changed.

(b) Notwithstanding Article 31.05, the clerk of the court of original venue shall:

(1) maintain the original papers of the case, including the defendant's bail bond or personal bond;

(2) make the papers available for trial; and;

(3) act as the clerk in the case.

Tex.Code Crim. Proc. Ann. art. 31.09 (West Supp.1998). This statute, however, did not become effective until September 1, 1995; appellant was tried in March 1995. In fact, H.B. 2949 enacting the statute had not passed either the House or the Senate at the time of trial. Act of May 27, 1995, 74th Leg., R.S., ch. 651, § 2, 1995 Tex. Gen. Laws 3535, 3536. Moreover, H.B. 2949 expressly provides that a criminal case in which the indictment is presented before the effective date of the act will be governed by the law in effect at the time of the indictment's presentation.

9. *Cf. Bridgman*, 183 S.W.2d at 708.

*See* H.B. 2949, §§ 2, 3, 1995 Tex. Gen. Laws 3535.[10]

## HARMLESS ERROR

In all the civil cases in which there was a violation of article V, section 7 of the statute constitution, the judgments, orders, or rulings were declared void. No harm analysis was considered. In *Stine,* a criminal case, the State argued that if the violation of article V, section 7 was error, it was harmless beyond a reasonable doubt under Rule 81(b)(2) of the Texas Rules of Appellate Procedure. The Court of Criminal Appeals responded: "Because the language of art. V, § 7 is clear and unambiguous, we interpret it to be mandatory, *non-waivable,*[11] and thus no harm analysis need be done." *Stine,* 908 S.W.2d at 431 (emphasis added). The court declared the constitutional provisions "are absolute systemic requirements which are not forfeitable per *Marin v. State,* 851 S.W.2d 275, 279–80." *Stine,* 908 S.W.2d at 432.[12]

On August 15, 1997, the Court of Criminal Appeals approved the new rules of appellate procedure, effective September 1, 1997. *See* Misc. Docket No. 97–9139 (Tex.Crim.App., August 15, 1997). The order expressly provides that the new rules apply to appeals pending on September 1, 1997, unless their application in a particular proceeding would not be feasible or would work an injustice. Rule 44.2(a) relating to "constitutional error" is the same as former Rule 81(b)(2), and it would appear that the *Stine* holding would be applicable regardless of which rule is utilized.

Since *Stine,* there have been some erasures on the blackboard outlining harmless error analysis. The legibility of that blackboard is not as clear as it once was. *Matchett v. State,* 941 S.W.2d 922 (Tex.Crim.App.

1996), disavowed *Marin's* suggestion that there need be no harm analysis when a mandatory statute is violated regardless of the particular circumstances. *Id.* at 928. *Matchett* dealt with the failure of the trial court in a felony case to follow the mandatory provisions of article 26.13(a)(4) and admonish the defendant upon his plea of guilty or nolo contendere that if the defendant was not a citizen of the United States his plea may result in deportation, exclusion from the country, or denial of naturalization under federal law. *See* Tex.Code Crim. Proc. Ann. art. 26.13(a)(4) (West 1989). The error was subjected to a harm analysis and found harmless in light of the fact the defendant was a United States citizen.

In *Cain v. State,* 947 S.W.2d 262 (Tex. Crim.App.1997), the court was again confronted with the same failure to admonish and same factual situation as in *Matchett.* Going beyond *Matchett,* however, the court decreed that *all errors* are subject to a harmless error analysis under Rule 81(b)(2). *Cain,* 947 S.W.2d at 264. "Except for certain federal constitutional errors labeled by the United States Supreme Court as structural,[13] no error, whether it relates to jurisdiction, voluntariness of a plea, or any other mandatory requirement is categorically immune to a harmless error analysis." *Id.* After painting with a broad brush, the court observed that "it may be true that some kinds of error (particularly jurisdictional ones) will never be harmless under the Rule 81(b)(2) test." *Id.*

The state constitutional error here involved is not subject to a meaningful harmless error analysis. The violation of article V, section 7 resulted in proceedings that were a nullity and a judgment that was void. We do not construe *Cain* as mandating that

---

**10.** In determining that article 31.09 is not applicable to this case, we do not address whether the statute is a valid exception to the provisions of article V, section 7 or pass on the constitutionality of the statute. These questions await another day.

**11.** As noted earlier, it is fundamental that parties to a lawsuit can neither confer or waive jurisdiction by agreement or consent. *See Stine,* 908 S.W.2d at 431. Article 1.14(a) pertains only to the waiver of rights by a defendant in a criminal prosecution of "any rights *secured him by law.*"

Tex.Code Crim. Proc. Ann. art. 1.14(a) (West Supp.1998) (emphasis added). The statute is inapplicable to the situation presented in the instant case.

**12.** In view of its holding, *Stine* did not mention the civil cases holding void those judgments obtained in violation of the constitutional provision.

**13.** *See Arizona v. Fulminante,* 499 U.S. 279, 309–10, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991).

we perform a harmless error analysis under the circumstances. There should be one rule for civil and criminal cases involving the same constitutional defect which renders the judgment void. Courts cannot question or vary from constitutional mandates. They are not free to question the wisdom of our constitution, but must give full effect to its plain meaning. The people have the sole power to change or modify the plain language adopted by them. *See Mellon Service Co.,* 946 S.W.2d at 867. If it could be said that a harmless error analysis is possible where the judgment is void, we certainly cannot say beyond a reasonable doubt that the error in this proceeding did not contribute either to the conviction or the punishment. *See* Tex. R.App. P. 44.2(a).

## CONCLUSION

The 277th District Court of Williamson County acted in violation of article V, section 7 of the Texas Constitution by conducting appellant's trial outside the county seat of Williamson County. The trial court did not lose subject matter or personal jurisdiction, but it lacked authority and power to adjudicate the rights of the parties when it conducted the trial in Smith County beyond its territorial limits. As a result, the trial was a nullity and the judgment rendered is void. *Mejia,* 906 S.W.2d at 167. The constitutional mandate may not be set aside by consent or agreement. *See Stine,* 908 S.W.2d at 430. Article V, section 7 is mandatory and non-waivable. *Stine,* 908 S.W.2d at 433. The error is not subject to harmless error analysis but if it were, we would hold that the error is harmful.

The foregoing concludes the panel opinion on original submission. For all the reasons stated, therein and earlier, I respectfully dissent to the affirmance of this conviction. Chief Justice ABOUSSIE and Justice POWERS join in this dissent.